Nancy CASIANO–MONTAÑEZ,
et al., Plaintiffs,

v.

STATE INSURANCE FUND
CORPORATION, et al.,
Defendants.

Civil No. 11–1002 (DRD).

United States District Court,
D. Puerto Rico.

March 5, 2012.

Celina Romany–Siaca, Celina Romany Law Office, San Juan, PR, for Plaintiffs.

Pedro A. Delgado–Hernandez, O'Neill & Borges, Yadhira M. Rodriguez–Quinones, Vanessa D. Bonano–Rodriguez, Department of Justice, Commonwealth of Puerto Rico, San Juan, PR, for Defendants.

## OPINION AND ORDER

DANIEL R. DOMÍNGUEZ, District Judge.

Pending before the Court is Defendants' *Motion to Dismiss* under Rule 12(b)(6) filed on May 9, 2011 (Docket No. 10), and *Supplemental Motion to Dismiss* filed on October 13, 2011 (Docket No. 22).

Plaintiffs seek injunctive and equitable relief under Sections 1983 and 1988 of the Civil Rights Act of 1871, 42 U.S.C. §§ 1983 and 1988, for allegedly being victims of political discrimination, for violations of their due process rights secured under the First, Fifth and Fourteenth Amendments of the Constitution of the United States of America, the Constitution of the Commonwealth of Puerto Rico; and for violations of Articles 1802 and 1803 of the Puerto Rico Civil Code, 31 L.P.R.A. §§ 5141 and 5142.

In their motion to dismiss, Defendants contend that Plaintiffs' complaint fails to allege specific acts necessary to sustain a claim for political discrimination pursuant to the applicable pleading standards of *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) and *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). In Defendants' supplemental motion to dismiss, Defendants request this Court's abstention under *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) as Plaintiffs all filed voluntarily administrative appeals before the Board of Appeals of the State Insurance Fund Corporation ("Board") which are currently pending before the Board.

For the reasons set forth below, the *Motion to Dismiss* is **GRANTED** based on the supplemented motion. Consequently, the instant case is hereby **DISMISSED WITHOUT PREJUDICE** based on the

*Younger* abstention, as further explained herein.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs were all employees of the State Insurance Fund Corporation ("Corporation"), offering medical and/or non-medical services at various locations operated and/or administered by the Corporation throughout Puerto Rico.[1] On January of 2010, Plaintiffs received letters of intent from the Corporation notifying them individually of their dismissal (in the case of Plaintiffs Casiano and Soto) and of the demotion of their most recent promotion and reinstatement to the former position held (in the case of the remaining ten (10) Plaintiffs, to wit: Reyes–Vargas, Torres–González, Reyes–Ramos, Espino, Torres–Escribano, Custodio, Villegas, Rosa, Otero and Santiago) ("Employment Actions"). The reason stated in the letters of intent for the Employment Actions was that their current positions at the Corporation were declared null[2] as a result of an audit of personnel transactions made in the period of 2001 thru 2008. The Employment Actions were confirmed and became effective between March 31, 2010 and August 18, 2010. (Docket No. 1).

Thereafter, Plaintiffs requested informal administrative hearings to challenge the Employment Actions taken by the Corporation. The Corporation upheld the nullity of Plaintiffs' appointments and the Employment Actions taken against Plaintiffs.

As a result, Plaintiffs all voluntarily filed administrative appeals before the Board to challenge the Corporation's determination of nullity of their positions and the Employment Actions. Those appeals are currently pending resolution. The Board has not issued to this date a final resolution on any of the appeals.

On January 4, 2011, before having any final adjudication of their administrative appeals, Plaintiffs filed a complaint in this Court stating, in general, that the Employment Actions taken by the Corporation were based on political discrimination because Plaintiffs were all known activists and sympathizers of the Popular Democratic Party ("PPD," for its Spanish acronym) and Defendants were all affiliated with the New Progressive Party ("PNP," for its Spanish acronym). (Docket No. 1). The Defendants are: (1) the Corporation; (2) Zoimé Alvarez Rubio, her husband, José Ignacio Cobián, and the Conjugal Partnership Composed by both individuals (co-defendant Zoimé Alvarez Rubio is sued in her official capacity as Administrator of the Corporation, and in her individual capacity); (3) Saúl Rivera Rivera, his wife, Jane Doe, and the Conjugal Partnership Composed by both individuals (co-defendant Saúl Rivera Rivera is sued in his official capacity as Associate Director of the Human Resources Office of the Corporation, and in his individual capacity); (4) Jorge García Ortiz, his wife, X, and the Conjugal Partnership Composed by both individuals (co-defendant Jorge García Or-

---

**1.** The Court notes that in the complaint, some Plaintiffs are alleged to have held career positions, while others are alleged to have held "regular" positions. *See* Docket No. 1. There is no allegation from Defendants alleging that any of Plaintiffs held confidential or trust positions. Therefore, the Court shall understand that all Plaintiffs held career positions within the Corporation.

**2.** Neither party has alleged that the basis for the Corporation's determination to annul Plaintiffs' positions was a violation of the Merit Principle of the Public Service Human Resources Administration Act of Puerto Rico—although the use of the word "audit" implies that something is amiss in their new employment acquisitions, i.e. substantive and/or procedural in nature.

tiz is sued in his official capacity as Executive Director of the Industrial Hospital of the Corporation, and in his individual capacity); and (5) Ernesto Santiago Sayas, his wife, Y, and the Conjugal Partnership Composed by both individuals (co-defendant Ernesto Santiago Sayas is sued in his official capacity as Administrator of the Industrial Hospital of the Corporation, and in his individual capacity).

On May 9, 2011, Defendants filed a *Motion to Dismiss* alleging that Plaintiffs' complaint: (1) includes unsupported conclusory statements of the causes of action claimed therein; (2) does not allege specific acts necessary to prove a prima facie case of political discrimination, specifically that Plaintiffs failed to allege that each of the Defendants had specific knowledge of each Plaintiffs' political affiliation, or that Defendants had opposing affiliations to those of Plaintiffs;[3] and (3) does not state factual allegations to distinguish the equal protection claim from their political discrimination claims.

On May 26, 2011, Plaintiffs filed their opposition to Defendants' motion to dismiss (Docket No. 14) re-alleging the charges included in the complaint. Specifically, Plaintiffs argue that Defendants **"were fully aware"** of Plaintiffs' political affiliation with the PPD because **"knowledge of political affiliation is commonplace within the walls of the SFIC"** (Docket No. 14, pages 6 and 7) (emphasis

in original), without offering factual information or actual details as to how Defendants came about such knowledge, particularly when Plaintiffs' were working at nine different locations throughout Puerto Rico.[4] (Docket No. 1).

On October 13, 2011, Defendants filed a supplemental motion to dismiss (Docket No. 22) requesting that this Court dismisses the instant action under the *Younger* abstention doctrine because there are pending state administrative proceedings before the Board concerning the issues and the parties of the instant complaint. (Docket Nos. 22 and 22-1). Defendants further contend that the Court should apply the same standard and analysis of *Dávila Feliciano v. Puerto Rico State Insurance Fund*, 818 F.Supp.2d 482 (D.P.R. 2011) because, as was the situation in *Dávila Feliciano*, Plaintiffs' administrative appeals are currently pending resolution before the Board.

On November 4, 2011, Plaintiffs filed their opposition to the supplemental motion to dismiss (Docket No. 25), alleging that the *Younger* abstention doctrine is not applicable to the case at hand, that even when "some plaintiffs" challenged the nullity and legality of the Corporation's Employment Actions, the **"Board lacks jurisdiction to hear and address political discrimination claims;"** that the Board's **"only express delegation of pow-**

**3.** The Court notes that Plaintiffs allege that their immediate supervisors had knowledge of Plaintiffs' political affiliation; however, because such supervisors are not parties in this case, Plaintiffs fail to allege how such knowledge can be attributed to Defendants.

**4.** As alleged in the complaint, the location where Plaintiffs were working immediately before effectiveness of the challenged employment actions is as follows: (1) Casiano was working at the Caguas Region; (2) Soto was working at the Cayey Dispensary; (3) Reyes-Vargas was working at Central Office; (4)

Torres-González was working at General Services Office; (5) Reyes-Ramos was working at the Arecibo Regional Office; (6) Espino was working at Central Office; (7) Torres-Escribano was working at the Caguas Region; (8) Custodio was working at the Carolina Regional Office; (9) Villegas was working at the Industrial Hospital; (10) Rosa was working at the Fajardo Dispensary; (11) Otero was working at the Industrial Hospital; and (12) Santiago was working at the Human Resources Office. *See* Docket No. 1.

er to address political discrimination cases would be … limited to employment separation during the probationary period;" and that this Court is "the exclusive forum that Plaintiffs have to present their claims of political discrimination under the U.S. Constitution." (Docket No. 25) (emphasis in original).

## II. MOTION TO DISMISS

Federal Rule of Civil Procedure 8(a) requires plaintiffs to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R.Civ.P. 8(a)(2). Under *Twombly, supra,* a plaintiff must "provide the grounds of his entitlement [with] more than labels and conclusions." Thus, a plaintiff must now present allegations that "nudge [her] claims across the line from conceivable to plausible" in order to comply with the requirement of Rule 8(a). *Id.* at 570, 127 S.Ct. 1955; *see e.g. Iqbal, supra.*

When considering a motion to dismiss, the Court's inquiry occurs in a two-step process under the current context-based "plausibility" standard established by *Twombly* and *Iqbal, supra.* "Context based" means that a Plaintiff must allege sufficient facts that comply with the basic elements of the cause of action. *See Iqbal,* 129 S.Ct. at 1949–1950 (concluding that plaintiff's complaint was factually insufficient to substantiate the required elements of a *Bivens* claim, leaving the complaint with only conclusory statements). First, the Court must "accept as true all of the allegations contained in a complaint[,]" discarding legal conclusions, conclusory statements and factually threadbare recitals of the elements of a cause of action. *Maldonado v. Fontanes,* 568 F.3d 263, 268 (1st Cir.2009) (quoting *Iqbal, supra* ) (internal quotation omitted).

Under the second step of the inquiry, the Court must determine whether, based upon all assertions that were not discarded under the first step of the inquiry, the complaint "states a plausible claim for relief." *Id.* This second step is "context-specific" and requires that the Court draw from its own "judicial experience and common sense" to decide whether a plaintiff has stated a claim upon which relief may be granted, or, conversely, whether dismissal under Rule 12(b)(6) is appropriate. *Id.*

Thus, "[i]n order to survive a motion to dismiss, [a] plaintiff must allege sufficient facts to show that he has a plausible entitlement to relief." *Sánchez v. Pereira–Castillo,* 590 F.3d 31, 41 (1st Cir.2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]' 'that the pleader is entitled to relief.' " *Iqbal,* 129 S.Ct. at 1950 (quoting Fed. R.Civ.P. 8(a)(2)). Furthermore, such inferences must be at least as plausible as any "obvious alternative explanation." *Id.* at 1950–51 (citing *Twombly,* 550 U.S. at 567, 127 S.Ct. 1955). "A plaintiff is not entitled to 'proceed perforce' by virtue of allegations that merely parrot the elements of the cause of action." *Ocasio–Hernández v. Fortuño–Burset,* 640 F.3d 1, 12 (1st Cir.2011), (citing *Iqbal,* 129 S.Ct. at 1950).

The First Circuit has cautioned against equating plausibility with an analysis of the "likely success on the merits," affirming that the plausibility standard assumes "pleaded facts to be true and read in plaintiff's favor" "even if seemingly incredible." *Sepúlveda–Villarini v. Dep't of Educ. of P.R.,* 628 F.3d 25, 30 (1st Cir.2010) (citing *Twombly,* 550 U.S. at 556, 127 S.Ct. 1955); *Ocasio–Hernández,* 640 F.3d at 12 (citing *Iqbal,* 129 S.Ct. at 1951); *see Twombly,* 550 U.S. at 556, 127 S.Ct. 1955 ("[A] well-pleaded complaint may proceed even if it

appears that a recovery is very remote and unlikely.") (internal quotation marks omitted); *see Ocasio–Hernández,* 640 F.3d at 12 (citing *Twombly,* 550 U.S. at 556, 127 S.Ct. 1955) ("[T]he court may not disregard properly pled factual allegations, 'even if it strikes a savvy judge that actual proof of those facts is improbable.' "). Instead, the First Circuit has emphasized that "[t]he make-or-break standard ... is that the combined allegations, taken as true, must state plausible, [but] not a merely conceivable, case for relief." *Sepúlveda–Villarini,* 628 F.3d at 29.

However, a complaint that rests on "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like" will likely not survive a motion to dismiss. *Aulson v. Blanchard,* 83 F.3d 1, 3 (1st Cir.1996). Similarly, unadorned factual assertions as to the elements of the cause of action are inadequate as well. *Peñalbert–Rosa v. Fortuño–Burset,* 631 F.3d 592 (1st Cir.2011). "Specific information, even if not in the form of admissible evidence, would likely be enough at [the motion to dismiss] stage; pure speculation is not." *Id.* at 596; *see Méndez Internet Mgmt. Servs. v. Banco Santander de P.R.,* 621 F.3d 10, 14 (1st Cir.2010) (The *Twombly* and *Iqbal* standards require District Courts to "screen[ ] out rhetoric masquerading as litigation.").

## III. APPLICABLE LAW AND DISCUSSION

■ It is well-established that exhaustion of state administrative remedies is not a prerequisite to filing an action under 42 U.S.C. § 1983. *See Patsy v. Board of Regents of State of Fla.,* 457 U.S. 496, 507, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982) ("exhaustion of state administrative remedies is not a prerequisite to an action under § 1983"). *See also Morales v. Vega,* 461 F.Supp. 656, 659 (D.P.R.1978); *American*

*Conveyor Corp. v. Guanica,* 614 F.Supp. 922 (D.P.R.1985); *Amelunxen v. University of Puerto Rico,* 637 F.Supp. 426 (D.P.R. 1986); and *Corporacion Insular de Seguros v. Garcia,* 680 F.Supp. 476 (D.P.R. 1988).

■ Nonetheless, should a plaintiff that has recourse to a federal claim **voluntarily** engage the wheels of an administrative procedure before filing an action in federal court, *Younger* abstention doctrine **requires** that federal courts should not interject themselves into such ongoing administrative proceedings until those proceedings have been adjudicated. *See Feliciano v. P.R. State Insurance Fund,* 818 F.Supp.2d 482, 498–500 (D.P.R.2011) (citing *Younger,* 401 U.S. at 53–54, 91 S.Ct. 746 (1971)); *Middlesex County Ethics Comm. v. Garden State Bar Ass'n,* 457 U.S. 423, 432, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982) (applying *Younger* to pending state administrative procedures); and *Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc.,* 477 U.S. 619, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986) (extending *Younger* to state administrative proceedings). In these circumstances, **"*Younger* precludes a litigant in a state administrative proceeding from circumventing review by a state court in favor of federal relief."** *Esso Standard Oil Co. v. López–Freytes,* 522 F.3d 136, 145 (1st Cir.2008) ("*Esso II*") (Emphasis added).

*Younger v. Harris, supra,* and its progeny stand for the general proposition that federal courts should abstain from interfering with pending state judicial or state administrative proceedings because state courts or state administrative agencies may properly safeguard federal constitutional rights intertwined with important state interests that are involved, so long as in the course of these proceedings plaintiffs are afforded adequate opportunity to

litigate their constitutional claims. *Middlesex*, 457 U.S. at 423–24, 102 S.Ct. 2515.

The doctrine of *Younger* abstention was applied to pending state administrative procedures for the first time in *Middlesex County Ethics Committee v. Garden State Bar Ass'n, supra.* The Supreme Court explained in *Middlesex* that "the policies underlying *Younger* are fully applicable to noncriminal judicial proceedings when important state interests are involved." (457 U.S. at 432, 102 S.Ct. 2515). In a subsequent case, the Supreme Court held that federal courts should abstain from adjudicating cases when there are state administrative proceedings "in which important state interests are vindicated, so long as in the course of those proceedings the federal plaintiff[s] would have full and fair opportunity to litigate [their] claim[s]." *See Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc.*, 477 U.S. 619, 627, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986).

In the instant case, when Plaintiffs requested informal hearings before the Corporation and filed their administrative appeals before the Board, they voluntarily "engaged the wheels of administrative exhaustion" before filing their civil rights claim in federal court. In this type of circumstance, the First Circuit has found that it is the federal court's duty to abstain from adjudicating such matters. Specifically, in the context of a civil rights case under Section 1983, such as the case at bar, the First Circuit held that:

> **In the absence of extraordinary circumstances, interests of comity and the respect for state processes demand that federal courts should abstain from interfering with ongoing state judicial proceedings.** *See, e.g., Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971); *Middlesex Co. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982). Although initially applied to state criminal actions, the abstention doctrine has been extended to other proceedings that implicate important state interests, including the state-level, quasi-judicial, administrative proceeding at issue here. *See Maymó–Meléndez v. Alvarez–Ramírez*, 364 F.3d 27, 31 n. 3 (1st Cir.2004) (enumerating the various applications of the *Younger* doctrine). Generally, insofar as the state proceedings evince "no showing of bad faith, harassment, or some other extraordinary circumstance that would make abstention inappropriate, the federal courts should abstain." *Middlesex Co. Ethics Comm.*, 457 U.S. at 435, 102 S.Ct. 2515. Extraordinary circumstances include those situations in which "core constitutional values are threatened during an ongoing state proceeding and there is a showing of irreparable harm that is both great and immediate." *Maymó–Meléndez*, 364 F.3d at 37 (internal quotation marks omitted). Among those extraordinary circumstances are cases in which extreme bias completely renders a state adjudicator incompetent and inflicts irreparable harm upon the petitioner. *Gibson v. Berryhill*, 411 U.S. 564, 577, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973). (Emphasis ours).

*Esso II*, 522 F.3d at 143.

■ Thus, the federal court **exceptionally** could interfere with the administrative proceeding only when "core constitutional values are threatened during an ongoing state proceeding and there is a showing of irreparable harm that is both great and immediate." *Maymó–Meléndez v. Alvarez–Ramírez*, 364 F.3d 27, 37 (1st Cir.2004), cert. denied, 543 U.S. 872, 125 S.Ct. 110, 160 L.Ed.2d 120 (2004) (internal quotation marks omitted). Even though *Younger* applies **only** when the relief asked of the federal court "in-

terferes" with the state proceedings (*see Quackenbush v. Allstate Insurance*, 517 U.S. 706, 716, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996)), *Younger's* use of the "interference" principle is broad. "Interference is [ ] usually expressed as a proceeding that either enjoins the state proceeding or has the 'practical effect' of doing so." *Rio Grande Community Health Center v. Rullan*, 397 F.3d 56 (1st Cir.2005) (citing *Gilbertson v. Albright*, 381 F.3d 965, 977–78 (9th Cir. 2004)). For example, federal courts have validated their interference in ongoing state judicial or administrative proceedings when: (1) plaintiff faces irreparable harm in the absence of injunctive relief upon the unavailability of state courts to provide interlocutory relief (*Esso II, supra*); (2) a federal case brought by non-parties of an ongoing state judicial proceeding (*Massachusetts Delivery Ass'n v. Coakley*, 671 F.3d 33, 45–46 (1st Cir. 2012)); (3) state court is acting beyond the lawful limits of its authority (*Chaulk Services, Inc. v. Massachusetts Com'n Against Discrimination*, 70 F.3d 1361, 1370 (1st Cir.1995) (citing *Bud Antle, Inc. v. Barbosa*, 35 F.3d 1355, 1365–66 (9th Cir.1994), as amended by, 45 F.3d 1261, 1272–73 (9th Cir.1994)); *Gartrell Construction, Inc. v. Aubry*, 940 F.2d 437, 441 (9th Cir.1991) (citing *Champion International Corp. v. Brown*, 731 F.2d 1406 (9th Cir.1984)); *National R.R. Passenger Corp. v. Florida*, 929 F.2d 1532, 1537 n. 12 (11th Cir.1991) (citing *Baggett v. Department of Professional Regulation*, 717 F.2d 521, 524 (11th Cir.1983)); *Southwestern Bell Tel. v. Ark. Public Service Commission*, 824 F.2d 672, 673 (8th Cir.1987); *Kentucky W. Va. Gas Co. v. Pennsylvania Pub. Util. Comm'n*, 791 F.2d 1111, 1115 (3d Cir.1986)); (4) claims raised in federal court would not necessarily implicate factual issues pending in an underlying state administrative proceeding involving disciplinary action for alleged misdeeds by black correctional officers that allege racial discrimination before federal court (*Washington v. County of Rockland*, 373 F.3d 310 (2d Cir.2004)); or (5) "where the state proceedings are undertaken in bad faith" (*Guillemard Gionorio v. Contreras Gómez*, 301 F.Supp.2d 122 (D.P.R.2004)).

■ In their opposition to Defendants' supplemental motion to dismiss, Plaintiffs allege that the *Younger* abstention is inappropriate in the instant case because the administrative appeals pending before the Board are centered on challenging the legality of the job internal announcements under which Plaintiffs obtained the positions declared null; whereas the instant case centers on constitutional grounds that are outside the Board's competence. To this respect, Plaintiffs allege that the Board **"lacks jurisdiction to hear and address political discrimination claims"** (Docket No. 25, page 3, emphasis in original) of employees that are no longer during the probationary period, pursuant to Article 5.4 of the Board's regulation. (Docket No. 25, page 5).

Pursuant to such contentions, Plaintiffs argue that the Court should not abstain from resolving the instant case because the issues pending before the Board are different than those pending before this Court. To be precise, Plaintiffs aver that their challenge of the Corporation's determination of nullity of Plaintiffs positions and the subsequent Employment Actions brought under the Board's consideration is separate from the request for injunctive and equitable relief brought before this Court for the alleged violation of Plaintiffs' constitutional rights and their discrimination on the basis of their political affiliations. However, Plaintiffs forget that they are making a due process claim which is based on their employment carrying a

property right as to their positions, all of which is now questioned by the state and will be determined by the Board. After all, the property rights giving rise to the due process claim is based on state law and not federal law. *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 538, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985).

The Court is unconvinced that the two issues are indeed different and separate items; instead, the Court concludes that they are so intertwined with one another as to warrant this Court's abstention under the *Younger* doctrine.

■ The determination of whether the *Younger* abstention is appropriate requires concurrence of the following conditions: (1) there is an ongoing state judicial proceeding; (2) the proceedings implicate and important state interest; and (3) there is an adequate opportunity in the state proceedings to raise federal constitutional challenges. *Rossi v. Gemma,* 489 F.3d 26, 34–35 (1st Cir.2007); *see also Middlesex,* 457 U.S. at 432, 102 S.Ct. 2515. In this case, because the parties have admitted the existence of an ongoing state administrative proceeding involving all parties appearing in this case, the Court must focus on the last two conditions.

To satisfy the second prong of the analysis, federal courts have established that a state has an important state interest in promoting fair employment practices. *See Beltran v. State of Cal.,* 871 F.2d 777, 783 (9th Cir.1988) (citing *Fresh Int'l Corp. v. Agricultural Labor Relations Board,* 805 F.2d 1353, 1360 (9th Cir.1986)). Plaintiffs' administrative appeals are centered on precisely this matter, requesting the Board to determine whether the Corporation employed fair employment practices in hiring and promoting Plaintiffs and in the eventu-

al Employment Actions. Therefore, the second prong of the analysis has been met.

As to the third prong of the analysis, in order to determine whether the Board's administrative proceeding affords Plaintiffs adequate opportunity to raise their claims, the Court must first examine whether Plaintiffs have a right to due process based on a property right relating to Plaintiffs' employment and whether the Board can adequately provide such due process.

### a. *Plaintiffs' Rights to Due Process*

■ It is well-established that the Due Process Clause of the Fourteenth Amendment guarantees public employees who have a **property interest** in continued employment the right to at least an informal hearing before they are discharged. *Loudermill,* 470 U.S. at 538, 105 S.Ct. 1487; *Board of Regents v. Roth,* 408 U.S. 564, 576–78, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Kercado–Melendez v. Aponte–Roque,* 829 F.2d 255, 262 (1st Cir.1987). It is also well-established that such property rights are not created by the Constitution, but by "existing rules or understandings that stem from an independent source such as state law." *Loudermill,* 470 U.S. at 538, 105 S.Ct. 1487 (quotations and citation omitted). However, when public employees are hired for career positions in violation of the Merit Principle[5] of the Public Service Human Resources Administration Act of Puerto Rico ("Public Personnel Act"),[6] or in violation of agency regulations promulgated thereunder, **such employees may not claim property rights to continued expectations of employment because their career appointments are null and void *ab initio.*** *Kauffman v. Puerto Rico Telephone Co.,* 841 F.2d 1169, 1173 (1st Cir.1988).

---

5.  3 L.P.R.A. §§ 1462–1462h.

6.  3 L.P.R.A. §§ 1461, et seq.

As noted in footnote 1, *supra*, before the effectiveness of the Employment Actions, Plaintiffs were public employees that held career positions providing a property right within the Corporation. Following an investigation of the personnel transactions made in the Corporation during the period of 2001 through 2008, the Corporation determined that Plaintiffs' positions within the Corporation were null. Though the actual reason for such determination remains unknown to the Court,[7] Plaintiffs contend, indirectly, that they have property rights to their former positions because they were appointed pursuant to "internal job posting procedures" and they worked under such status for some time.

The determination of whether Plaintiffs had property rights to their position is at the core of the controversy brought before the Board, since the Board would have to conclude whether the Corporation adhered to the Merit Principle or as to the internal regulations of the Corporation in the hiring and promoting of Plaintiffs to the disputed positions so as to determine the validity of the Employment Actions taken by the Corporation. If this Court were to enter into such a determination, the Court would be resolving the same matter brought under the Board; which is precisely what the *Younger* abstention doctrine precludes federal courts from doing.

### b. *The Board*

The Workmen Compensation Act,[8] the law that created the Corporation, requires that the Corporation comply with the requirements of the Puerto Rico Uniform Administrative Act ("LPAU," for its Spanish acronym),[9] with respect to the approval of regulations in connection with the Corporation's organization and internal opera-

tion. 11 L.P.R.A. § 1b–3. Further, despite being exempt from the provisions of the Public Personnel Act, the Corporation must follow the Merit Principle established therein and shall conform to the rules and regulations issued thereunder. 11 L.P.R.A. § 1b–4.

Under the Merit Principle, employees are classified in two categories: "career employees" and "confidential" or "trust employees." "Career employees" are those who have been admitted into the public service in compliance with the procedures of the Merit Principle and may include those that may be serving in interim basis as confidential employees. 3 L.P.R.A. § 1465(1). "Confidential employees" are those that substantially intervene or collaborate in the formulation of public policy, or those who directly advise or render direct services to the head of the agency. Generally, confidential employees are subject to at-will termination (excepting First Amendment implications). 3 L.P.R.A. § 1465(2). Confidential employees, who prior to their confidential status were career employees, are entitled to be returned to career service unless, prior thereto, such employees were removed from the confidential service in which they served. 3 L.P.R.A. § 1465a.

Pursuant to the LPAU, career employees are encouraged to resolve any employment dispute through an informal administrative procedure within the agency. Specifically, Section 2102 of LPAU reads as follows:

> It is hereby established that the public policy of the Commonwealth is to encourage the informal solution of administrative solution of administrative issues so that formal solution of the matters

---

7. *See* note 2, *supra*.

8. 11 L.P.R.A. §§ 1, et seq.

9. 3 L.P.R.A. §§ 2101, et seq.

submitted to the agency will be unnecessary. The agencies shall establish the rules and procedures that will allow the informal solution of the matters submitted for their consideration without impairing the rights guaranteed by this chapter.

The adjudicative proceedings are provided in Section 2151 of LPAU. Section 2151(a) specifically provides that:

(a) When by provision of a law, rule, regulation or of this chapter, an agency must formally adjudicate a controversy; **the proceedings shall be governed by this subchapter.** Voluntary procedures for dispute resolution established by law or regulation shall not be included. [. . .]

The following rights shall be safeguarded in any formal adjudicatory procedure before an agency:

(A) The right to **timely notice of the charges** or complaints or claims against one of the parties.

(B) The right to **introduce evidence.**

(C) The right to an **impartial adjudication.**

(D) The right to have the **decision based on the record** of the case.

(Emphasis ours).

Upon a final determination of administrative adjudicative proceedings, complainants may request state judicial review of the final determinations and their constitutional complaints. In this respect, the Puerto Rico Supreme Court held that:

the principal function of judicial review is to make sure that administrative agencies with delegated powers act within those powers delegated by the Legislature and **look for the compliance with constitutional principles,** in particular those of the due process of law; **guaranteeing that the citizens have a forum where they can vindicate their rights and obtain a remedy from the administrative body.**

*Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R.,* 144 D.P.R. 425 (1997) (Translation ours).

In compliance with the Workmen Compensation Act and the LPAU, the Corporation created the Board under its Personnel Regulation.[10] Pursuant to Articles 18.2 and 18.9 of the Personnel Regulation, the Board has competence to resolve the complaints of the Corporation's employees regarding the merit principle, and if its decision with respect such complaint is favorable to the employees, the Board can order reinstatement. Nonetheless, if the Board's decision is not favorable to the employee; the employee may request state judicial review by filing a petition for review with the Puerto Rico Court of Appeals, pursuant to Section 2171 of LPAU.

If after the Board adjudicates the appeals filed by Plaintiffs, the Board determines that Plaintiffs appointments were legal and in compliance with the Merit Principle of the Personnel Act, the Board can order Plaintiffs' reinstatements to their positions. Under such occurrence, Plaintiffs allegations of political discrimination (which is the central controversy in the instant case) would be academic and the instant case would be rendered moot as Plaintiff will be reinstated with back pay and may later seek damages or other applicable remedies even in federal court, but for the time being, we must "hold our hand" and not enter into the fray. Nonetheless, if the Board's decision is not favorable to Plaintiffs, they may file requests for judicial review before the Puerto Rico Court of Appeals. The fact that Plaintiffs

10. Regulation No. 6226 of November 6, 2000, as amended by Regulation Nos. 7974, 7975 and 7976 of December 30, 2010, and Regulation No. 8157 of February 17, 2012.

have access to state judicial review would make federal intervention unnecessary at this juncture. Therefore, state judicial review is sufficient to protect Plaintiffs' constitutional rights. *Esso Standard Oil Company v. Esteban Mujica Cotto*, 389 F.3d 212, 222 (1st Cir.2004) ("Esso I").

The above discussion illustrates the procedure that the Corporation and the Board must follow to consider and resolve the complaints and grievances of the Corporation's employees while guaranteeing the rights of those employees. Based on such statutory framework, this Court concludes that the ongoing administrative proceeding under the Board's consideration affords Plaintiffs adequate opportunity to raise their claims.

Pursuant to the Court's analysis, it has determined that all of the conditions required to warrant the *Younger* abstention in the instant case have been met, and that interference with the Board's administrative appeals is not warranted at this stage. Consequently, the Court has decided to abstain.

Notwithstanding the above, if Plaintiffs do not prevail on their administrative appeal before the Board and their state judicial review of the Board's final determination, Plaintiffs' First Amendment claim can survive, **but it will be limited** to establishing a prima facie case of political discrimination, proving, particularly, that other employees of the Corporation belonging to the same political party as Defendants and having the same deficiencies as Plaintiffs in their nominations continued to be employed at the Corporation.

■■ It is hornbook law that the First Amendment protects "non-policymaking" public employees (i.e. career employees) from adverse employment actions based on their political affiliation or opinion. *Rutan v. Republican Party of Ill.*, 497 U.S. 62, 74–76, 110 S.Ct. 2729, 111 L.Ed.2d 52

(1990). To establish a prima facie case of political discrimination, plaintiffs must first show that the political party affiliation was a substantial or motivating factor behind an adverse employment action. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Mercado–Alicea v. P.R. Tourism Co.*, 396 F.3d 46, 51 (1st Cir.2005), *Kercado–Melendez v. Aponte–Roque*, 829 F.2d 255, 264 (1st Cir.1987); *Rosaly v. Ignacio*, 593 F.2d 145, 148–49 (1st Cir.1979). Also, to support a claim for political discrimination, a plaintiff may provide evidence "that other employees, who also did not comply with all legal and statutory requirements for appointment, remained as employees." *Román v. Delgado Altieri*, No. 01–1544(DRD), 2005 WL 3358906, *2 (D.P.R. Dec. 9, 2005).

In the instant controversy, Plaintiffs have made absolutely no allegation in their complaint as to other employees who were also hired and/or promoted following internal job posting procedures as Plaintiffs, but whose positions were not annulled and therefore not subject to the challenged employment actions because they do not belong to the same political party as Plaintiffs. Consistent with the above discussion, the Court cautions Plaintiffs that proffering evidence of such element would be essential to their eventual success in a First Amendment claim that may be raised before federal courts in the future.

## IV. CONCLUSION

For the reasons set forth above, the Court hereby **GRANTS** Defendant's *Motion to Dismiss* and *Supplemental Motion to Dismiss* (Docket Nos. 10 and 22) under the *Younger* abstention doctrine. Consistent with such doctrine, the instant case is dismissed without prejudice, subject to potential return to this Court, once the bur-

dens of the *Younger* abstention have been overcome, to examine federally protected "core" constitutional values, "extreme bias"[11] or "structural bias," (*see Esso II,* 522 F.3d at 143), requiring the *sine qua non* showing of irreparable harm that is both "great and immediate" (*Maymó–Meléndez v. Alvarez–Ramírez,* 364 F.3d 27, 35 (1st Cir.2004), cert. denied, 543 U.S. 872, 125 S.Ct. 110, 160 L.Ed.2d 120 (2004), cited in *Esso Standard Oil Co. v. López–Freytes, supra*), and a showing that other employees who also did not comply with all legal and statutory requirements for their appointment, remained as employees of the Corporation.

The Court cautions that reaching the threshold of "structural bias" and/or "extreme bias" is not necessarily easily achieved; however, a violation of a federally "core" protected constitutional right accompanied by a showing of irreparable damage, under *Esso II,* 522 F.3d at 143–148, cannot *a priori* be discounted not to occur. The instant case is therefore dismissed without prejudice. Judgment will be entered accordingly.

**IT IS SO ORDERED.**

---

11. The threshold of personal "extreme bias" constitutes a steep mountain to climb since the same requires "completely rendering the state adjudicator incompetent." *Esso II,* 522 F.3d at 143, (citing *Gibson v. Berryhill,* 411 U.S. at 577, 93 S.Ct. 1689 (1973)) (recognizing Gibson's bias in an "exceptional circumstance" authorizing discontinuance of *Younger* abstention). The Court also does not understate the requirement of "great and immediate" irreparable harm to be satisfied by Plaintiffs for a potential return to this Court.