Versión para imprimir



EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Wanda I. González Segarra, Ana I. Nieves Santiago, Zilka I. Moll Molina, Emelda Pizarro Cámara y otros<br><br>      Recurridos<br><br>            v.<br><br>Corporación del Fondo del Seguro del Estado<br><br>      Peticionario | Certiorari<br><br>2013 TSPR 34<br><br>188 DPR \_\_\_\_ |

Número del Caso: CC-2011-1051


Fecha: 19 de marzo de 2013


Tribunal de Apelaciones:

        Región Judicial de San Juan, Panel IV


Abogados de la Parte Peticionaria:

        Lcdo. José Roberto Feijoó
        Lcda. María Esther Martínez Pinto
        Lcdo. Jorge L. Capó Matos
        Lcdo. Dimitri González

Abogado de la Parte Recurrida:

        Lcdo. Ramón Rodríguez Meléndez
        Lcdo. Antonio Adrover Robles
        Lcdo. Harold J. Rivera Vázquez


Materia: Nulidad Convocatoria Interna.


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Wanda I. González Segarra,
Ana I. Nieves Santiago, Zilka
I. Moll Molina, Emelda
Pizarro Cámara y otros

      Recurridos            CC-2011-1051

        v.

Corporación del Fondo del
Seguro del Estado

      Peticionario

Opinión del Tribunal emitida por el Juez Asociado señor MARTÍNEZ TORRES

En San Juan, Puerto Rico, a 19 de marzo de 2013.

Durante varios años, las agencias y corporaciones públicas acostumbraron publicar convocatorias de transacciones de personal exclusivas para sus empleados. Ese proceder, permitido por ley o reglamento bajo circunstancias particulares, dejó de ser la excepción para tornarse en la regla. A raíz de ello, surgen múltiples interrogantes respecto a cómo esa práctica vulnera el principio de mérito que rige el servicio público.

El caso que hoy resolvemos nos permite precisar si los nombramientos mediante convocatorias internas otorgados a los recurridos violentaron la política

pública que encarna el principio de mérito.[1]

I

Los hechos que dan base a la controversia que hoy nos ocupa surgieron luego de que la Administradora de la Corporación del Fondo del Seguro del Estado (CFSE), Lcda. Zoimé Álvarez Rubio, anulara los nombramientos y ascensos de 232 empleados que trabajan en esa entidad. Esos nombramientos se efectuaron durante los cuatrienios 2001 a 2004 y 2005 a 2008, por dos administradores anteriores, mediante convocatorias internas.

La anulación de esos nombramientos y ascensos fue el resultado de una auditoría que ordenó la licenciada Álvarez Rubio sobre los expedientes de personal, así como las transacciones relativas a la administración de los recursos humanos en la CFSE desde enero de 2001 hasta diciembre de 2008. Esa auditoría se ordenó con el propósito de determinar el cumplimiento con las normas y procedimientos que rigen ese campo, especialmente aquellas transacciones de personal en que aplicara el principio de mérito.

Tras el análisis de los documentos contenidos en los expedientes de personal, así como la revisión de documentos relacionados, la auditoría reveló que

---

[1] Para una muestra de otros casos en los que también se llevaron a cabo convocatorias internas en detrimento al principio de mérito, véanse, Casiano-Montañez v. State Insurance Fund Corporation, et al., 852 F. Supp. 2d 177 (D. P.R. 2012); Joubert-Vazquez v. Alvarez-Rubio, 820 F.Supp.2d 289 (D. P.R. 2011); Feliciano v. Puerto Rico State Insurance Fund, et al., 818 F. Supp. 2d 482 (D. P.R. 2011); Corcino-Rodriguez v. State Ins. Fund Corp., 2011 WL 1259834 (D. P.R. 2011).

> [e]n virtud del Reglamento de Personal de la Corporación del Fondo del Seguro del Estado de 11 de enero de 2000, el proceso de reclutamiento de personal gerencial se debe realizar mediante la competencia abierta en donde puedan participar tanto los empleados de la Corporación del Fondo del Seguro del Estado como los aspirantes fuera de la misma. Desde el año 2003 al 2008, se cambió el proceso de emisión de convocatorias para publicar puestos vacantes pertenecientes a la clase gerencial, de un proceso de libre competencia a un proceso de emisión de convocatorias internas, en el cual solo participaron los empleados de la Corporación del Fondo del Seguro del Estado….
>
> …
>
> Del total de 3,835 expedientes auditados, se encontró que 232 de estos contenían información que reflejaba esta práctica de incumplimiento con el Artículo 14, Sección 14.1 [del Reglamento de Personal de la CFSE] debido a que no se permitió la competencia de aspirantes fuera de la Corporación del Fondo del Seguro del Estado que estuvieran cualificados para dichos puestos. De los 232 expedientes, 165 correspondían a empleados que ya tenían estatus regular en la Corporación del Fondo del Seguro del Estado antes de la referida transacción de personal, y 67 correspondían a empleados que al momento de la transacción no contaban con un estatus permanente en la Corporación.
>
> Apéndice, págs. 1071-1073.

Para la realización de la auditoría se analizaron también las disposiciones de la Ley Núm. 184-2004, según enmendada, conocida como "Ley para la Administración de los Recursos Humanos en el Servicio Público del Estado Libre Asociado de Puerto Rico", en particular las Secciones 6.3 y 6.4. 3 L.P.R.A. secs. 1463b-1462c. Del análisis de esas

disposiciones se concluyó que en el proceso de reclutamiento se debe permitir la competencia a toda persona cualificada, independientemente de que laboren en la CFSE. Asimismo, se señaló que la Ley Núm. 184-2004, supra, y el Reglamento de Personal de la CFSE, limitaban el reclutamiento interno a la necesidad de determinado tipo de experiencia. En otras palabras, esa excepción para reclutar se debe efectuar tras un análisis técnico que justifique una convocatoria interna exclusiva para empleados de la CFSE.

En el informe se expresó también que de los 232 expedientes no se encontró análisis técnico o fundamentos que justificaran las convocatorias internas. Solo se halló una comunicación que la entonces Directora de Administración, Sra. Olga Grajales Méndez dirigió al entonces administrador de la CFSE, Lcdo. Nicolás López Peña. En la comunicación se detalló una serie de puestos para los **"que por razón de su ubicación"**, era deseable reclutar un personal con competencia o conocimientos del área en específico.

El memorando con fecha de 26 de junio de 2003 dispuso lo siguiente:

> Conforme al Artículo 14.1 del Reglamento de Personal hemos determinado que ciertos puestos **por razón de su ubicación** es deseable reclutar un personal con una competencia y/o [sic] conocimiento de los procesos del área en específico.
> Por tal razón, solicitamos su autorización para que estos puestos se convoquen internamente, circunscribiéndose a que empleados de la Corporación solamente puedan

solicitar. Adjunto listado [sic] donde se detallan los puestos identificados.

A ese memorando se le adjuntó un anejo con los puestos para los que la señora Grajales Méndez identificó que era necesario reclutar mediante convocatorias internas ("Listado [sic] Puestos Sugeridos para Emitirse en Convocatoria Interna"). El entonces administrador endosó el documento con una nota de "conforme". **Sin embargo, de los veintitrés empleados recurridos, solo surge el número de puesto del Sr. Ramón J. Rodríguez González. (Número de Puesto 3087, Supervisor de Inversiones).** *Los números de puestos de los demás empleados recurridos no están en esa lista.* En otras palabras, **no existe ninguna otra justificación en el expediente para el reclutamiento de los demás veintidós empleados recurridos mediante convocatorias internas.**

En cuanto a esa práctica de la CFSE, la auditoría indicó:

> Del análisis realizado, vemos que se incluyeron una serie de puestos tales como: Secretaria Ejecutiva, Oficiales Administrativos, Supervisores de Inversiones, Ayudantes Técnicos, Analistas en Administración de Recursos Humanos, Funcionarios de Asuntos de Personal, Especialista en Desarrollo Administrativo y Operacional, Supervisor de Limpieza, entre otros, los cuales son clases, que según el plan de clasificación vigente no requieren requisitos especiales o una experiencia particular. Para determinar si un puesto tiene funciones específicas que solamente se pueden adquirir en la Corporación, debe realizarse un estudio de mercado o un

estudio técnico en el cual se determine si las funciones de un puesto tiene[n] tareas exclusivas en el mismo y de esa manera se podrán excluir para emitirse en convocatoria interna, para circunscribir la competencia a los empleados de la Corporación.

Apéndice, págs. 176-177.

Además de lo anterior, en la auditoría se tomó en consideración que conforme al Manual de Procedimientos de Personal para la Administración Central, el tipo de competencia debe estar contenida en la norma de reclutamiento. En particular, en el informe se expresó que

[e]l técnico que prepara el borrador de la Norma de Reclutamiento establecerá en forma preliminar el tipo de competencia. La competencia puede ser de ingreso o de ascenso. El caso que sea una competencia de ascenso se especificará si es limitada a la agencia o al servicio de carrera general. Al hacer esta determinación tomará en cuenta la naturaleza del trabajo, requisitos mínimos establecidos, nivel de especialización de la clase, vacantes proyectadas, cualificaciones de candidatos, mercado de empleo y las recomendaciones de los especialistas en la materia y asociaciones y colegio.

Es nuestra conclusión que al no haberse realizado el análisis técnico requerido para enmendar las Normas de Reclutamiento, a fin de determinar si las convocatorias de referencia serían de ascenso y no de ingreso, la determinación del Administrador se tomó sin ninguna base técnica o reglamentaria que la sostenga.

Apéndice, pág. 178.

Por otro lado, el informe de auditoría determinó que se incumplió con el Art. 9, Sec. 9.5 del Reglamento de Personal,

*supra*, que regula el cambio de categoría de un puesto de confianza a un puesto de carrera. El auditor razonó que el cambio de categoría allí estatuido es una excepción en la que un empleado puede adquirir permanencia en un puesto de carrera sin tener que competir. Por esa razón, cualquier desviación privaría a otros candidatos cualificados de competir en igualdad de condiciones para ocupar esas posiciones. Concluyó que del análisis realizado, hubo cambio de categoría en tres puestos: Director de Contratación, Director de Manejo de Riesgo y Director de Educación y Desarrollo. Añadió que un análisis de esos cambios reveló que se incumplió con los requisitos de la Sec. 9.5 del Reglamento de Personal, *supra*, algo esencial en los casos de cambios de categoría.[2] Tampoco se cumplió con los requisitos establecidos en el Reglamento de Personal para que opere el mecanismo de excepción. Así pues, el informe recomendó la anulación de los cambios en categoría de los puestos de Director de Contratación, Director de Educación y Desarrollo, así como del Director de Manejo de Riesgos. De la misma forma, se invitó a la cesantía de aquellos que ocupaban los

---

[2] El Art. 9.5 del Reglamento de Personal requiere el cumplimiento estricto de los siguientes requisitos:

"1) Ocupar el puesto por un periodo de tiempo no menor al equivalente al periodo probatorio para la clase de puesto.
2) Aprobar el examen establecido para la clase de puesto.
3) Que se reúnan los requisitos establecidos para la clase de puestos.
4) Que el Administrador o su representante autorizado certifique que sus servicios han sido satisfactorios".

puestos, pues en ausencia de un derecho propietario, no les asiste el derecho a la reinstalación.

Vistas las recomendaciones del informe, la licenciada Álvarez Rubio cursó misivas separadas a los empleados afectados en las que notificó la intención de anular sus nombramientos. Todas las cartas contenían una explicación general sobre la auditoría realizada y el hallazgo de que el nombramiento al puesto fue mediante convocatoria interna. Se expresó que los nombramientos a través del proceso de convocatoria interna constituyen una excepción extrema al principio de publicidad general que subyace al principio de mérito. Explicó que para recurrir a la utilización de convocatorias internas para el reclutamiento de personal, era necesario que la metodología utilizada se fundamentase y estableciera las razones por las cuales el puesto se excluyó de una convocatoria abierta, publicidad general y notificación mediante aviso público de oportunidades de empleo.

Además, en cada carta se manifestó al empleado que en la instancia específica de su caso, no se realizó el análisis técnico correspondiente, lo que constituyó una actuación contraria a lo dispuesto en el Art. 14, Sec. 14.1 del Reglamento de Personal, supra. Se enfatizó en la importancia de la publicidad de las oportunidades de empleo, como un medio para asegurar que todo ciudadano pueda competir para ocupar puestos públicos, según se recoge en la Ley Núm. 32-

2006, 3 L.P.R.A. secs. 1461b-1462c,[3] que aplica a la CFSE. Finalmente, se les informó a las partes que tenían derecho a solicitar una vista administrativa informal.

Oportunamente las partes en este caso solicitaron la vista informal de rigor y comparecieron ante el Oficial Examinador designado. Este, tras celebrar las vistas correspondientes, recomendó que se ratificara la nulidad de todos los nombramientos. La licenciada Álvarez Rubio acogió la recomendación y notificó a los empleados la anulación de sus respectivos nombramientos. A raíz de lo anterior, los empleados que antes ocupaban un puesto gerencial regular de carrera fueron reinstalados en ese puesto, con un ajuste a las nuevas escalas salariales, pero retuvieron los aumentos por mérito obtenidos mientras ocuparon los puestos anulados. Por su parte, a los empleados que se reinstalaron en puestos unionados se les eliminaron los pasos obtenidos por mérito y se les concedieron los aumentos estipulados en los convenios colectivos. Finalmente, un último grupo quedó cesante ya que no ocupaban una plaza regular de carrera antes del nombramiento anulado.

Finalmente, se informó a los perjudicados de su derecho a apelar la decisión ante la Junta de Apelaciones de la CFSE. Veintitrés empleados apelaron individualmente esa determinación. Como a ese grupo se les unió la Asociación de

---

[3] Esta ley enmendó las secciones 4.3, 6.3, 6.4 y 6.5 de la Ley Núm. 184-2004, con el propósito de crear un registro central de convocatorias para el reclutamiento, selección y ascensos, y proveer sobre su disponibilidad de forma electrónica en la internet.

Empleados Gerenciales y la Federación de Empleados Gerenciales, la Junta consolidó todas las apelaciones en una.

En sus apelaciones, los empleados arguyeron que se les violó el debido proceso de ley en la formulación de cargos y en la vista informal. Además, plantearon que: 1) sus nombramientos fueron legales; 2) existe una presunción de corrección de las actuaciones administrativas; 3) aplicaban las doctrinas de cosa juzgada e impedimento colateral por las decisiones del administrador de turno y; 4) hubo discrimen político en esas decisiones.

El 14 de abril de 2011 la Junta emitió su resolución final. La resolución fue suscrita por el Lcdo. Godwin Aldarondo Girald, Presidente, y el Lcdo. Fernando Font Lee, representante de la Administración. Este último suscribió también una resolución concurrente. Por su parte, la Lcda. Myriam M. Pérez Stuart, representante de los empleados gerenciales, suscribió una resolución disidente. De entrada, la resolución suscrita por la Junta expresó que al tratarse de la interpretación de disposiciones reglamentarias (controversia de derecho), el caso se resolvió por la vía sumaria, **con la anuencia de las partes.**

Inicialmente, la Junta concluyó que la notificación cursada a los empleados cumplió con los requisitos del debido proceso de ley. En específico, determinó que la carta de notificación señaló específicamente la acción adversa que se tomaría contra el empleado, esto es, la anulación del nombramiento y la intención de descenso o separación del

servicio, e informó la razón para ello. También razonó que la carta incluyó una descripción de la prueba con que contaba la agencia, esencialmente, los hallazgos de la auditoría. Añadió que se advirtió al empleado sobre su derecho a una vista informal, por lo que la carta constituyó una notificación adecuada al empleado. Finalmente, destacó que con la notificación brindada, los empleados ejercieron su derecho a solicitar la vista informal.

Asimismo, la Junta determinó que la decisión de denegarles a los empleados descubrimiento de prueba y contrainterrogatorio de testigos fue conforme al debido proceso de ley. Llegó a esa decisión porque entendió que la vista informal cumplió con los requisitos mínimos del debido proceso de ley requerido en esas circunstancias. Razonó que el oficial examinador escuchó a los empleados y evaluó la prueba documental que estos sometieron. Con esa prueba, el oficial examinador rindió un informe e hizo sus recomendaciones a la licenciada Álvarez Rubio, quien tomó la decisión final.

Sobre el principio de mérito y la legalidad de los nombramientos, la Junta precisó que la legislación en el área de personal del servicio público, así como lo dispuesto en los Arts. 13 y 14 del Reglamento de Personal de la CFSE, hacen mandatorio que se divulguen ampliamente las oportunidades de empleo con el propósito de atraer a las personas más capacitadas. Reconoció que las leyes y el Reglamento de Personal de la CFSE facultan a la autoridad

nominadora a limitar la competencia para determinadas clases de puestos. Sin embargo, aclaró que esa es una excepción que requiere el cumplimiento estricto de los requisitos reglamentarios que justifiquen la acción tomada.

La Junta abordó si el anterior Administrador de la CFSE, dentro de la autoridad delegada, ejerció su discreción ejecutiva para nombrar a todos sus empleados, establecer las normas de reclutamiento y determinar el tipo de competencia recomendable en cada caso. Concluyó que una vez se establecen por reglamento los criterios y procedimientos a seguir en esas gestiones administrativas, el administrador tiene limitada su facultad ejecutiva y está obligado a cumplirlos. Por ello, si se excede en el ejercicio de esa facultad y no sigue esos criterios y procedimientos, sus actos son *ultra vires.*

Adicional a lo anterior, afirmó que el problema fue que entre el 2001 y el 2008, las convocatorias internas se convirtieron en rutinarias y se utilizaron para cubrir plazas que no requerían llenarse exclusivamente con empleados que tengan experiencia o conocimientos considerables en la CFSE. Ante ello, concluyó que la disposición reglamentaria que limita la competencia a los empleados y ex empleados con experiencia en la CFSE, es una norma excepcional que requiere una determinación caso a caso.

Por otro lado, la Junta descartó que el Reglamento de Personal de la CFSE requiera un análisis técnico para justificar la excepción establecida en el Art. 14. Arguyó que

aunque ello sea deseable o recomendable, ese artículo solo requiere que el Administrador ejerza su discreción consciente e intencionalmente. En otras palabras, debe indicar que para determinada "clase de puesto" el candidato tiene que tener una experiencia particular en la CFSE. Es decir, que solo se requiere del Administrador una razón de negocio fundamentada que justifique limitar su discreción de poder seleccionar de un grupo más amplio de candidatos y preferir escoger de los empleados de la agencia. Según la Junta, tiene que mediar (1) una determinación del Administrador; (2) una situación o caso particular; (3) e identificar la clase de puestos que, por su naturaleza, se requiere una experiencia particular y no general. En fin, concluyó que la única justificación para excluir a personas interesadas de la participación de las convocatorias es una razón de necesidad del servicio. Es decir, que la esencia del puesto haga mandatorio que el candidato tenga una experiencia específica en la CFSE relacionada con las funciones que va a desempeñar.

De igual forma, la Junta determinó que existe una diferencia sustancial entre dar preferencia a los empleados actuales de la agencia para puestos en ascensos y darle exclusividad de oportunidad para esos nombramientos. Así, la preferencia requiere que exista una norma uniforme, clara y precisa para concederla. Por ejemplo, se pueden conceder puntos o un porciento adicional en el proceso de evaluación para cualificar para un puesto. Esto ayudaría a un empleado a entrar al registro de elegibles. De ese registro la autoridad

nominadora escogerá al candidato que considere idóneo. Así, rechazó la contención de algunos empleados que sostuvieron que independientemente de las cualificaciones, experiencia, preparación académica o cualidades especiales de un candidato, una vez un empleado de la CFSE cumple con los requisitos mínimos requeridos para un puesto, tiene que dársele la posición sobre candidatos externos. La Junta explicó que esa interpretación, aunque estimable, no es la que sirve mejor al interés público, ya que el Estado tiene interés en atraer al servicio público a los mejores talentos.

En cuanto a los ascensos, la Junta resolvió que el hecho de que el Reglamento de Personal provea oportunidades y mecanismos para ascensos, no significa que todo puesto que pueda significar un ascenso tiene que otorgarse a un empleado de la entidad. Señaló que lo que el reglamento pretende es que la CFSE cree programas de adiestramiento, pago de estudios o provea experiencias de trabajo que permitan al empleado adquirir nuevos conocimientos que le faciliten cualificar para puestos en ascenso. Por ello, expresó que ese lenguaje no puede interpretarse como una obligación a otorgar el puesto a un empleado porque represente un ascenso, ni tampoco que se tengan que excluir candidatos cualificados de la comunidad. Según su postura, el empleado tiene que competir con los demás candidatos en igualdad de condiciones, excepto cuando medie un interés apremiante del Estado. Concluyó que un sistema de libre competencia es el que mejor

puede proteger el principio de mérito esbozado en la legislación y la jurisprudencia.

De la misma forma, la Junta descartó que para que una convocatoria interna sea válida, tiene que dársele la oportunidad de competir a los ex empleados, como argumentó la CFSE. Para llegar a esa conclusión, la Junta se basó en el término utilizado en la Sec. 14.1 del Reglamento de Personal que dispone que "la competencia **podrá** circunscribirse a los empleados y ex empleados que posean tal experiencia en la corporación". Opinó que al utilizarse ese término, se concedió **discreción** al Administrador para incluir a los exempleados. Creyó que aunque la Sec. 13.7 del Reglamento de Personal requiere que se mantenga un registro de reingreso de exempleados, para la fecha de las convocatorias la agencia no demostró que existiera uno. Al no existir un registro de exempleados, resulta innecesario requerirle a la CFSE que les notificara. Así, concluyó que la Sec. 14.1 del reglamento faculta al administrador a identificar clases de puestos para los que la competencia se limite a empleados, exempleados o a ambos simultáneamente.

La Junta tampoco acogió el planteamiento que hizo la CFSE de que el mecanismo de convocatoria interna que se utilizó es contrario al requisito de publicidad general que establece la Ley Núm. 32-2006, supra. Concluyó que la Ley Núm. 32-2006, íd., no es determinante en este caso para los nombramientos hechos antes de su efectividad, aunque sí para los nombramientos posteriores. No obstante, especificó que

debido a que el Reglamento de la CFSE contiene los requisitos de publicidad y competencia, la Ley Núm. 32-2006, íd., meramente expande la norma que existía antes de la aprobación de esa ley.

Concluyó que la Sec. 14.1 del reglamento no autoriza a identificar puestos aislados, sino una clase de puestos. Para ello, analizó la definición de "clases" del Art. 7 del Reglamento de Personal.[4] Explicó que la especificación de clase responde a un estudio técnico de parte de la CFSE y es una herramienta de trabajo en el área de administración de los recursos humanos como elemento esencial del principio de mérito. Añadió que en toda entidad existen clases de puestos que exigen ciertos conocimientos que solo se adquieren por medio de la experiencia en el seno de la organización. Por ello, las organizaciones tienen la discreción de hacer determinaciones de ese tipo dentro de un marco de razonabilidad. Así, la experiencia y la preparación académica son requisitos que aplican a todos los puestos dentro de una clase. Por esa razón, determinó que el ejercicio de discreción del administrador es válido en la medida en que su determinación aplique a una clase de puestos, ya que solo así

---

[4] El reglamento define "clases" como:

"Grupo de puestos cuyos deberes, índole de trabajo, autoridad y responsabilidades sean de tal modo semejantes que puedan razonablemente denominarse con el mismo título, exigirse a sus incumbentes los mismos requisitos mínimos y equitativamente aplicarse la misma escala de retribución bajo condiciones de trabajo sustancialmente iguales".

se protege el interés público, se asegura un trato igual y se evita el favoritismo personal, la arbitrariedad y el capricho en la administración de recursos humanos. Por ello, afirmaron que la experiencia no puede requerirse para un puesto y para otro no. El puesto es el mismo sin importar su ubicación.

La Junta estableció que el lenguaje del memorando de la Sra. Olga Grajales Méndez, incumplió con lo que requiriere la Sec. 14.1 del Reglamento de Personal, por ser sumamente ambiguo. Opinó que el memorando, sin otra justificación oficial, carecía de validez para limitar la competencia a los empleados actuales, por ser arbitrario. Además, entendió que la justificación de ubicación para limitar la convocatoria fue errada, toda vez que no había nada especial en las ubicaciones (San Juan, Bayamón, Carolina, Ponce, Caguas, Arecibo y Mayagüez). No se trataba de lugares remotos de difícil acceso o de alta peligrosidad que hicieran difícil conseguir personal interesado. Finalmente, pronunció que la utilización del término "resulta deseable" utilizado en el memorando como justificación para convocar internamente contradice el lenguaje de la Sec. 14.1 del Reglamento de Personal, que ordena que "se requiera determinado tipo de experiencia". Así, concluyó que el memorando por sí solo no justificaba limitar la competencia y solo tendría peso y validez si surgiese evidencia adicional de que las clases identificadas requieren amplio conocimiento de la CFSE, sus operaciones, normas, reglamentos y procedimientos.

Por otra parte, la Junta denegó también las alegaciones de un grupo de empleados respecto a que llenar plazas vacantes con personal existente respondió a la política de control de gastos que estatuyó la Ley Núm. 111-2006, 3 L.P.R.A. sec. 8763 nt, "Ley de control de gastos en la nómina gubernamental para la Reforma Fiscal del Gobierno de Puerto Rico del 2006", y la Ley Núm. 103-2006, "Ley para implantar la Reforma Fiscal del Gobierno del Estado Libre Asociado de P.R.", 3 L.P.R.A. sec. 8751 *et seq*. Al estudiar esas leyes, explicó que el propósito de la Ley Núm. 111-2006, supra, fue el control de gastos en la nómina del Gobierno con cargo al Fondo General en búsqueda de un presupuesto balanceado. Por otro lado, el propósito de Ley Núm. 103-2006, supra, fue evitar la creación de nuevos puestos para reducir el gasto de nómina del gobierno central. Manifestó que la Carta Circular 82-07 de la Oficina de Gerencia y Presupuesto de 30 de agosto de 2006,[5] no podía extender sin aprobación legislativa las normas y directrices para el control del gasto de nómina a las corporaciones públicas, que no dependen del Fondo General del Gobierno. Acepta que, si bien es cierto que la carta no podía obligar a la CFSE, nada impedía que el administrador adoptara esa política como medida de salvaguarda. Explicó que la División de Presupuesto recomendó esa norma al administrador para evitar sobrepasar el porciento permitido y

---

[5] "Normas Relacionadas sobre Controles de Gastos en el Gobierno del Estado Libre Asociado relacionadas con la OE-2006-27".

autorizado para gastos de administración de la CFSE. Ello surgía de un memorando con fecha de 26 de junio de 2006 que la Directora de Presupuesto, Sra. Lydia Correa Gómez, dirigió al administrador. Opinó que en el expediente del caso no constó evidencia de que el entonces administrador o la Junta de Gobierno de la CFSE hayan adoptado los términos de ese memorando. Así, en vista de que la señora Correa Gómez no era la autoridad nominadora, no se podía asumir que la CFSE asumió esa postura.

Sobre el argumento de otros empleados, que se basaron en lo que resolvimos en Laboy v. E.L.A., 115 D.P.R. 190 (1984), la Junta opinó que ese caso no era aplicable, toda vez que el Reglamento de Personal de la CFSE se enmendó para eliminar la obligación de dar prioridad a un empleado sobre un candidato externo.

Por último, la Junta desestimó las alegaciones sobre discrimen político ya que los empleados no pudieron probar un caso *prima facie*. Razonó que aunque se dieran por ciertas las alegaciones vertidas, la CFSE probó que tenía razones no discriminatorias para su actuación, como lo fueron los hallazgos incontrovertidos de la auditoría.

Al concurrir, el Lcdo. Fernando Font Lee expresó su conformidad con la conclusión de que no hubo violación del debido proceso de ley. Asimismo, dijo estar de acuerdo con la acción de la administradora de anular las convocatorias ya que al ser cerradas, constituyeron una acción ilegal e incorrecta, pues la práctica de ese tipo de convocatoria se

torné en la norma y no en la excepción, en violación del principio de mérito. No obstante, consideró que cuando se hacen convocatorias cerradas, sin excepción alguna de las clases o series de puestos, es necesario un análisis técnico. Sostuvo que la carta dirigida por la señora Grajales Méndez al administrador dista mucho de ser ese análisis técnico requerido, por lo que se tomaron en consideración otros factores ajenos al Reglamento de Personal para autorizar y circular las convocatorias internas.

Inconformes, veinte empleados recurrieron al Tribunal de Apelaciones mediante cuatro recursos de revisión judicial separados, que ese foro consolidó.[6] Tras evaluar la

---

[6] En el primero de ellos (KLRA201100611), comparecieron Julio Edwin Santiago Cruz e Ivette Díaz Vélez. El señor Santiago Cruz comenzó como empleado de la CFSE el 14 de julio de 1993 mediante un nombramiento temporero como Oficinista I, ubicado en la División de Seguros e Intervenciones, Oficina del Jefe, en la Región de Caguas. Durante diecisiete años ocupó puestos unionados hasta que el 16 de julio de 2008 lo nombraron, mediante la convocatoria interna 198-08, al puesto gerencial número 1561 de la clase de Oficial Administrativo I, ubicado en el Área de Operaciones, Servicios Regionales, Status Patronal, Oficina Central. Ese puesto corresponde a una clase que forma parte del servicio gerencial de carrera. Tras la anulación de ese puesto, fue reinstalado al puesto 477 de la clase Oficial de Seguros IV ubicado en el Área de Operaciones, Pólizas del Gobierno, Oficina Central.
Por su parte, la Sra. Ivette Díaz Vélez fue nombrada el 2 de septiembre de 2004, mediante la convocatoria interna 101-05, al puesto 3162 de Asesor en Auditoría, ubicado en la Oficina de Auditoría, Oficina Central. El 29 de abril de 2010 la Administradora de la CFSE declaró nulo su nombramiento y la separó del servicio.
En el segundo recurso (KLRA201100616) compareció la Sra. Ivette Fuentes Ortiz, quien ocupaba un puesto de Secretaria Confidencial en el servicio de confianza en la CFSE. La CFSE publicó las convocatorias internas 90-07 y 93-07 para establecer un registro de elegibles para cubrir varios puestos de la clase de Secretaria Ejecutiva I y de

(continúa...)

Secretaria Ejecutiva III, respectivamente. La señora Fuentes Ortiz figuró en la lista de elegibles de ambas convocatorias. La CFSE seleccionó a la señora Fuentes Ortiz en la convocatoria 90-07 y el 16 de marzo de 2008 la nombró como Secretaria Ejecutiva I, puesto gerencial de carrera. Posteriormente, el 3 de septiembre de 2008 la CFSE la seleccionó en la convocatoria 93-07 y la nombró como Secretaria Ejecutiva III, puesto gerencial de carrera. El 14 de abril de 2010 fue separada del servicio.

El tercer recurso (KLRA201100619) corresponde a la Sra. Wanda González Segarra y la Sra. Abigail Martínez Calderón. La señora González Segarra fue nombrada el 16 de mayo de 2008, mediante la convocatoria interna 90-07 Gerencial, en el puesto 228 de la clase de Secretaria Ejecutiva I, ubicado en Servicios Administrativos, Oficina Regional de Arecibo, Dispensario de Manatí. El 5 de abril de 2010 se anuló su nombramiento y se le separó del servicio.

Por su parte, la Sra. Abigail Martínez Calderón fue nombrada al puesto 6215 de la clase de Terapista Físico de Gerencial II ubicado en Servicios Médicos, Terapia Física, Oficina Regional de San Juan. El 16 de abril de 2008 fue nombrada mediante convocatoria interna 5-08 Gerencial, en el puesto 0162 de la clase de Terapista Físico de Gerencial III ubicado en Servicios Médicos, Terapia Física, Oficina Regional de Bayamón. El 25 de mayo de 2010 su nombramiento se anuló y se reinstaló en el puesto 6215 de la clase de Terapista Físico de Gerencial II ubicado en Servicios Médicos, Terapia Física, Oficina Regional de San Juan.

El último de los recursos (KLRA201100668) se presentó conjuntamente por quince empleados. Estos fueron Ana I. Nieves Santiago, Zilka I. Moll Molina, Emelda Pizarro Cámara, Claudine Lewis Rivera, Edgardo Torres Cabrera, Elizabeth de Jesús Afanador, Gabriel Martes Pagán, Ramón J. Rodríguez González, Mayra Almodóvar Cortés, Rafael Zayas Morales, Wanda I. Santiago Serrano, José Toral Muñoz, David Pérez Vázquez, Abraham Pérez Valentín y Orlando Aldebol Borrero.

La Sra. Ana I. Nieves Santiago fue nombrada el 2 de septiembre de 2004 mediante la convocatoria interna 168-05 Gerencial al puesto 3212 de la clase de Especialista en Reclamaciones y Compensaciones I ubicado en Compensaciones, Oficina Regional de Bayamón. El 1 de agosto de 2008 fue nombrada, mediante convocatoria interna 40-08, al puesto 2731 de la clase Especialista en Reclamaciones y Compensaciones III, ubicado en Reclamaciones, Compensaciones, Oficina Regional de Bayamón. El 22 de abril de 2010 se anuló su nombramiento y fue reinstalada en el puesto 0724 de la clase Oficial de Status Patronal IV, ubicado en el Área de Operaciones, Status Patronal, Oficina Central.

(continúa...)

La Sra. Zilka I. Moll Molina fue nombrada el 3 de abril de 2006, mediante convocatoria interna 37-06 Gerencial, en el puesto 3239 de la clase Secretaria Ejecutiva I ubicado en Seguros e Intervenciones, Oficina Regional de Humacao. El 22 de abril de 2010 se anuló su nombramiento y fue separada del servicio.

La Sra. Emelda Pizarro Cámara fue nombrada el 1 de mayo de 2008, mediante la convocatoria interna 138-08 Gerencial, en el puesto 2297 de la clase de Oficial Administrativo I ubicado en Reclamaciones, Información y Ayuda al Ciudadano, Oficina Regional de Carolina. El 29 de abril de 2010 se anuló su nombramiento y fue separada del servicio.

La Sra. Claudine Lewis Rivera fue nombrada el 1 de septiembre de 2004, mediante la convocatoria interna 229-04 Gerencial, en el puesto 3363 de la clase Secretaria Ejecutiva IV ubicado en la Oficina de Contratación, Oficina Central. El 29 de abril de 2010 la Administradora del Fondo anuló su nombramiento y la reinstaló en el puesto 3363 de la clase de Secretaria Ejecutiva III, ubicado en la Oficina de Contratación, Oficina Central.

El Sr. Edgardo Torres Cabrera fue nombrado el 16 de marzo de 2006 mediante la convocatoria interna 74-06 Gerencial, en el puesto 2323 de la clase Oficial Administrativo I ubicado en Servicios Ambulatorios, Citas Médicas, Hospital Industrial. El 29 de abril de 2010 su nombramiento fue anulado y fue separado del servicio.

La Sra. Elizabeth de Jesús Afanador fue nombrada el 16 de febrero de 2006, mediante la convocatoria interna 15-06 Gerencial, en el puesto 1681 de la clase de Oficial Administrativo I ubicado en Asuntos Secretariales, Dispensario de Utuado, Oficina Regional de Arecibo. El 29 de abril de 2010 su nombramiento se anuló y se le separó del servicio.

El Sr. Gabriel Martes Pagán fue nombrado el 16 de agosto de 2004, mediante la convocatoria interna 235-04 Gerencial, en el puesto 6629 de la clase Oficial Administrativo I ubicado en Servicios Administrativos, Oficina del Jefe, Dispensario de Corozal, Oficina Regional de Bayamón. El 4 de mayo de 2010 se anuló su nombramiento y se le reinstaló al puesto 1537 de la clase Técnico de Presupuesto V, ubicado en Finanzas, Contraloría, Presupuesto, Oficina Central.

El Sr. Ramón J. Rodríguez González fue nombrado el 1 de diciembre de 2003, mediante la convocatoria interna 272.03 Gerencial, en el puesto 3087 de la clase Supervisor de Inversiones ubicado en Reclamaciones, Inversiones, Oficina Regional de San Juan. El 4 de septiembre de 2008, fue nombrado, mediante la convocatoria interna 38-08 Gerencial, en el puesto 1093 de la clase Especialista en Reclamaciones y Compensaciones I, ubicado en Reclamaciones, Compensaciones, Oficina Regional de San Juan. El 11 de mayo

(continúa...)

de 2010 su nombramiento se anuló y se le reinstaló en el puesto 0322 de la Clase Oficial de Compensaciones III, ubicado en Reclamaciones, Compensaciones, Oficina Regional de San Juan.

La Sra. Mayra Almodóvar Cortés fue nombrada el 2 de julio de 2008, mediante la convocatoria interna 173-08 Gerencial, en el puesto 5666 de la clase Oficial Administrativo I ubicado en la División de Servicios Administrativos, Dispensario de Yauco, Oficina Regional de Ponce. El 7 de mayo de 2010 se anuló su nombramiento y se le separó del servicio.

El Sr. Rafael Zayas Morales fue nombrado el 4 de septiembre de 2008, mediante la convocatoria interna 41-09 Gerencial, en el puesto 6822 de la clase Oficial Administrativo II ubicado en Admisiones, Récord Médico, Hospital Industrial. El 11 de mayo de 2010 se anuló su nombramiento y se le separó del servicio.

La Sra. Wanda I. Santiago Serrano fue nombrada el 16 de agosto de 2008, mediante la convocatoria interna 299-08 Gerencial, en el puesto 3244 de la clase Oficial Administrativo II ubicado en el Área de Asesoría Jurídica, Servicios Legales, Oficina de Manejo de Riesgos, Oficina Central. El 11 de mayo de 2010 se anuló su nombramiento y se le separó del servicio.

El Sr. José Toral Muñoz fue nombrado el 2 de septiembre de 2004, mediante la convocatoria interna 231-04 Gerencial, en el puesto 2718 de la Clase Oficial Ejecutivo I ubicado en el Área de Finanzas, Sistemas de Información y Asuntos Actuariales, Planificación, Estadísticas y Estudios, Planes Estratégicos, Oficina Central. El 11 de mayo de 2010 se anuló su nombramiento y se le separó del servicio.

El Sr. David Pérez Vázquez fue nombrado el 18 de diciembre de 2006, mediante la convocatoria interna 228-06 Gerencial, en el puesto 6233 de la clase Supervisor de Limpieza ubicado en Servicios Administrativos, Propiedad y Servicios, Dispensario de Manatí, Oficina Regional de Arecibo. El 14 de mayo de 2010 se anuló su nombramiento y se le separó del servicio.

El Sr. Abraham Pérez Valentín fue nombrado el 2 de septiembre de 2004, mediante la convocatoria interna 244-04, en el puesto 2308 de la clase Especialista en Rehabilitación del Hospital Industrial ubicado en Rehabilitación Vocacional, Hospital Industrial. El 14 de mayo de 2010 la Administradora de la CFSE anuló su nombramiento y le separó del servicio.

Por último, el Sr. Orlando Aldebol Borrero fue nombrado el 29 de mayo de 2008, mediante la convocatoria interna 142-08 Gerencial, en el puesto de 5513 de Subdirector Ejecutivo Regional, Oficina Regional de Aguadilla. El 20 de mayo de 2010 se anuló este nombramiento y se reinstaló al señor Aldebol Borrero en el puesto 1480

(continúa...)

controversia, el foro apelativo intermedio revocó. Concluyó que

> la legislación aplicable a este caso no exige expresamente la utilización de una convocatoria abierta al público general para atraer al personal más capacitado e idóneo para ocupar puestos gerenciales en el servicio público. Por el contrario, la ley precisamente contempla la utilización de la convocatoria interna como un medio para asegurar la competencia que ha de seguirse para la ocupación del puesto que se trate, sobre [todo] en los niveles más altos, como los que ocupan los gerenciales. Por tanto, en los procesos de reclutamiento, selección o ascenso, las agencias no están siempre obligadas a la publicación de convocatorias de *libre competencia* para cumplir con el principio de mérito incorporado en estas leyes. Por el contrario, se propicia la retención y el crecimiento profesional de su propio personal. (Énfasis en el original.)
>
> Sentencia del Tribunal de Apelaciones, Apéndice, pág. 44.

Fundamentándose en Laboy v. E.L.A., 115 D.P.R. 190, 194 (1984), el foro apelativo intermedio concluyó que la interpretación que la administradora realizó de las Secs. 13.2 y 14.1 del Reglamento de Personal, supra, fue demasiado restrictiva.

Así, el Tribunal de Apelaciones entendió que el Administrador de la CFSE tiene amplia discreción para determinar el tipo de competencia que se utilizará en las convocatorias para ascenso o reclutamiento.

---

de la Clase Oficial Ejecutivo I ubicado en Servicios Administrativos, Oficina Regional de Mayagüez.

Por otro lado, el Tribunal de Apelaciones resolvió, al igual que la Junta, que no se violentaron las garantías fundamentales de los empleados en la primera etapa de los procedimientos. De la misma forma, coligió que a los empleados no se les privó de la vista formal que exige el debido proceso de ley que se le concede a un empleado de carrera antes de afectarle su derecho propietario.

Asimismo, sostuvo que la Junta no erró al resolver el caso por la vía sumaria, ya que se trataba de la interpretación de disposiciones legales. De la misma forma, esbozó que los empleados no fueron víctimas de discrimen político, toda vez que surgían hechos objetivos, como la auditoría realizada, que podían justificar la actuación administrativa impugnada. El foro apelado concurrió con la Junta de Apelaciones en que los empleados no establecieron un caso *prima facie* de discrimen político.

En síntesis, el Tribunal de Apelaciones determinó que

> (1) el cumplimiento con el principio de mérito no exige un proceso rígido de reclutamiento, selección o ascenso que pueda lograrse únicamente mediante la competencia abierta; (2) que la decisión tomada por el Administrador que realizó los nombramientos está cobijada por una presunción de corrección que no fue rebatida en este caso; y (3) tanto la Administradora como la Junta de Apelaciones determinaron la nulidad de los nombramientos por razón del incumplimiento de unos requisitos legales que no están presentes en las leyes de personal público ni en el Reglamento de Personal del Fondo.
>
> Sentencia del Tribunal de Apelaciones, Apéndice, pág. 71.

Insatisfecha con esa determinación, la CFSE acude ante nos. En síntesis, arguye que el Tribunal de Apelaciones violó el principio de mérito al declarar válidas las convocatorias internas emitidas fundamentándose en la liberalidad del proceso de reclutamiento. Añade también que el foro apelativo intermedio se equivocó al determinar que las convocatorias internas cumplieron con el mandato de la Ley Núm. 111-2006, supra. Asimismo, entiende que el foro apelado desacertó al concluir que los fundamentos que usó la CFSE para anular los nombramientos eran insuficientes en derecho. Finalmente, asegura que el Tribunal de Apelaciones cometió error al apreciar la prueba que tuvo ante sí, pues estableció parámetros arbitrarios para la evaluación de una determinación administrativa sin base en la prueba que tuvo ante sí el foro administrativo.

El 30 de marzo de 2012 expedimos el auto de certiorari. Con la comparecencia de las partes, procedemos a resolver.

II

Hemos reiterado en innumerables ocasiones "que las decisiones de los foros administrativos están revestidas de una presunción de regularidad y corrección. Las conclusiones de estas agencias merecen gran deferencia por parte de los tribunales, por lo que debemos ser cuidadosos al intervenir con las determinaciones administrativas". Empresas Loyola I, S. en C., S.E. v. Comisión de Ciudadanos al Rescate de Caimito, Op. de 18 de octubre de 2012, 2012 T.S.P.R. 154, 2012 J.T.S. 167, 186 D.P.R. ___ (2012);

Acar[ó]n et al. v. D.R.N.A., Op. de 28 de agosto de 2012, 2012 T.S.P.R. 134, 2012 J.T.S. 147, 186 D.P.R. __ (2012); Calderón Otero v. C.F.S.E., 181 D.P.R. 386, 395 (2011); Asoc. Fcias. v. Caribe Specialty et al. II, 179 D.P.R. 923, 940 (2010); Otero v. Toyota, 163 D.P.R. 716, 727 (2005). Véase, además, Sec. 4.5 de la Ley Núm. 170 de 12 de agosto de 1988, conocida como "Ley de Procedimiento Administrativo Uniforme" (L.P.A.U.), según enmendada, 3 L.P.R.A. sec. 2175. La razón de esta norma es clara. "[S]e fundamenta en la vasta experiencia y el conocimiento especializado que ostentan las agencias acerca de los asuntos que les son encomendados". Hernández, Álvarez v. Centro Unido, 168 D.P.R. 592, 614 (2006). Véanse, además, P.C.M.E. v. J.C.A., 166 D.P.R. 599, 616-617 (2005); Otero v. Toyota, supra, pág. 727. Por ello, al revisar una decisión administrativa, el criterio rector para los tribunales será la razonabilidad en la actuación de la agencia. Íd. Amparados en esa deferencia y razonabilidad, será entonces que los tribunales analizarán las determinaciones de hechos de los organismos administrativos.

De conformidad con lo anterior,

> los tribunales no deben intervenir o alterar las determinaciones de hechos de un organismo administrativo "si las mismas están sostenidas por evidencia sustancial que surja del expediente administrativo considerado en su totalidad". Como hemos definido en diversas ocasiones, *evidencia sustancial* es "aquella evidencia relevante que una mente razonable podría aceptar como adecuada para

sostener una conclusión". (Citas omitidas.)

Otero v. Toyota, supra, págs. 727-728.

Con esto en mente, una parte afectada que quiera controvertir las determinaciones de hechos de un organismo administrativo deberá demostrar la existencia de otra prueba que sostenga que la actuación de la agencia no está basada en evidencia sustancial o que reduzca el valor de la evidencia impugnada. Íd., pág. 728. Véase, además, Domínguez v. Caguas Expressway Motors, Inc., 148 D.P.R. 387, 397-398 (1999). De no lograrlo, el tribunal respetará las determinaciones de hechos y no sustituirá el criterio de la agencia por el suyo. Íd.

Ahora bien, el escenario es distinto cuando se trata de las conclusiones de derecho. A estas últimas "el tribunal las puede revisar en todos sus aspectos, sin sujeción a norma o criterio alguno." Pereira Suárez v. Jta. Dir. Cond., 182 D.P.R. 485, 513 (2011) citando a Rebollo v. Yiyi Motors, 161 D.P.R. 69, 77 (2004). Véase, además, la Sec. 4.5 de la L.P.A.U., supra. "De ordinario, al revisar las decisiones de las agencias, los tribunales brindan mucha deferencia y respeto a las interpretaciones del estatuto que sean efectuadas por el organismo facultado por ley para velar por su administración y cumplimiento". Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R., 144 D.P.R. 425, 436 (1997). De esa forma, "[s]i la interpretación de la ley realizada por la agencia es razonable, aunque no sea la única razonable, *los tribunales*

*deben darle deferencia".* (Énfasis en el original.) Hernández, Álvarez v. Centro Unido, supra, pág. 616.

En síntesis, al ejercer su función revisora, los tribunales no pueden descartar libremente las conclusiones e interpretaciones de derecho de la agencia y sustituir el criterio de estas por el propio. "Dicha deferencia judicial al *expertise* administrativo, sin embargo, cede ante una actuación irrazonable o ilegal. La interpretación de la agencia también cede cuando ésta produce resultados incompatibles o contrarios al propósito del estatuto interpretado y a su política pública". (Citas omitidas.) Pacheco v. Estancias, 160 D.P.R. 409, 433 (2003). A la luz de lo anterior, la deferencia cederá únicamente

> (1) cuando no está basada en evidencia sustancial; (2) cuando el organismo administrativo ha errado en la aplicación de la ley, y (3) cuando ha mediado una actuación irrazonable o ilegal. Si el tribunal no se encuentra ante alguna de estas situaciones, aunque exista más de una interpretación razonable de los hechos, debe sostener la que seleccionó la agencia encargada.

> Otero v. Toyota, supra, pág. 729.

III

Tanto nuestra Constitución como la Constitución federal reconocen el derecho fundamental al debido proceso de ley. Const. EE. UU., Emdas. V y XIV L.P.R.A., Tomo 1; Const. P.R. Art. II, Sec. 7; Domínguez Castro *et al.* v. E.L.A. I, 178 D.P.R. 1, 35 (2010); Rivera Santiago v. Srio. de Hacienda, 119 D.P.R. 265, 273 (1987).

La garantía constitucional a un debido proceso de ley

"impone al Estado la obligación de garantizar que la interferencia con los intereses de libertad y propiedad del individuo se haga a través de un procedimiento que sea justo y equitativo". Domínguez Castro *et al*. v. E.L.A. I, supra, págs. 887-888. Véase, además, López Vives v. Policía de P.R., 118 D.P.R. 219, 230-231 (1987). Ahora bien, la protección que ofrece el debido proceso de ley entra en juego cuando se atenta contra un interés individual de libertad o propiedad. Íd., pág. 888. Véanse, además, Board of Regents v. Roth, 408 U.S. 564, 569, 570 (1972); Domínguez Castro *et al*. v. E.L.A. I, supra, pág. 46; Rivera Santiago v. Srio. de Hacienda, supra, págs. 273- 274.

"Los empleados públicos de carrera en Puerto Rico tienen un interés propietario sobre sus plazas, por lo que son acreedores de un debido proceso de ley". Vázquez González v. Mun. San Juan, 178 D.P.R. 636, 643 (2010). Véase, además, Domínguez Castro *et al*. v. E.L.A. I, supra, págs. 46-47. Para dar cumplimiento a la garantía constitucional es necesario el cumplimiento de los siguientes requisitos: "(1) notificación adecuada del proceso; (2) proceso ante un juez imparcial; (3) oportunidad de ser oído; (4) derecho a contrainterrogar a los testigos y examinar la evidencia presentada en su contra; (5) tener asistencia de abogado, y (6) que la decisión se base en el expediente". Íd. Véase, además, Rivera Rodríguez & Co. v. Lee Stowell, etc., 133 D.P.R. 881, 889 (1993). Cónsono con lo anterior, para intervenir

con el derecho propietario que ostentan los empleados públicos "es necesario celebrar una vista informal previa en donde se le dé al empleado la oportunidad de ser escuchado". Vázquez González v. Mun. San Juan, supra, págs. 643-644.

El foro apelativo intermedio resolvió en su sentencia que no se violentaron las garantías fundamentales de los empleados en la primera etapa de los procedimientos. Ello incluyó una reevaluación del proceso de notificación, el contenido de la carta de intención de anular los nombramientos, la celebración oportuna de las vistas informales y la notificación del derecho de los afectados a apelar de la determinación final de la administradora. Eso no está en controversia. Solo nos toca resolver si los nombramientos de los recurridos se hicieron conforme a las facultades discrecionales del administrador de la CFSE como sostuvo el Tribunal de Apelaciones.

IV

"El `principio de mérito´ postula que los empleados públicos se seleccionen y se retengan exclusivamente en consideración a sus méritos e idoneidad". A. Cuevas Biret, La negociación colectiva y el sistema de mérito en Puerto Rico, Comisión del Gobernador para Estudiar Relaciones del Trabajo en el Servicio Público de Puerto Rico, (1974), pág. 16. Para lograr ese objetivo, es necesario que "sean los más aptos los que sirvan al Gobierno y que todo empleado sea seleccionado, adiestrado, ascendido y retenido en su

empleo en consideración al mérito y a la capacidad, sin discrimen por razones de raza, color, sexo, nacimiento, edad, origen o condición social, ni por ideas políticas o religiosas". Rodríguez v. Bco. Gub. de Fom. P.R., 151 D.P.R. 383, 410 (2000). Véase, además, Ley Núm. 184, supra, 3 L.P.R.A. sec. 1461(42). Al salvaguardar esos criterios de selección, se adquiere una plataforma laboral compuesta por servidores públicos idóneos y competentes.

Ahora bien, el principio de mérito es un procedimiento de selección de personal exclusivo del servicio público. A. Cuevas Viret, op cit., pág. 17. Nació de la "necesidad de poner frenos a la práctica del padrinazgo político y a su efecto sobre la moralidad y la eficiencia del gobierno". Íd. Con los años, se pensó que "[e]n vez de impedir la entrada de los favoritos políticos, la consigna era facilitar la entrada a los más capacitados". Íd., pág. 19. Con el inicio del movimiento de la gerencia científica, "[p]ronto apareció la clasificación de los empleados y la fijación sistemática de sueldos". Íd. El desarrollo de una teoría administrativa provocó el reconocimiento de la función de personal como uno de los elementos más importantes de la gerencia, tanto en la empresa privada como en el gobierno. Íd. A esos efectos, el principio de mérito impulsó "ofrecer igualdad de oportunidades a toda la ciudadanía para el ejercicio de las funciones públicas". Íd., pág. 16. En síntesis, trazó el camino hacia la eficiencia en la carrera pública y marcó el inicio del

objetivo de ofrecer igualdad de oportunidades a todos para el ejercicio de las funciones públicas. Íd., pág. 16.

El principio de mérito dejó de ser un ideal para convertirse en realidad en 1947. Ese año, tras múltiples intentos para lograr un cambio, se aprobó la Ley Núm. 345 de 12 de mayo de 1947, conocida como "Ley de Personal". Esa pieza legislativa inauguró el sistema de mérito en la administración del personal del Gobierno de Puerto Rico. "Su aprobación representó un paso significativo en la evolución histórica de nuestra administración pública". Exposición de Motivos de la Ley Núm. 5 de 14 de octubre de 1975, "Ley de Personal del Servicio Público". Fue, sin duda, un avance "importante en el esfuerzo de nuestro pueblo por proveerse a sí mismo un sistema de administración de personal basado en el principio de mérito". Íd.[7]

Transcurridas casi tres décadas de la vigencia de esa legislación, el 14 de octubre de 1975 se aprobó la Ley Núm. 5, supra. "Su aprobación constituyó un importante avance en la precisión de una política pública que consolidara el principio de mérito y lo extendiera a otros sectores del empleo público que hasta ese momento no se regían por dicho principio". Exposición de Motivos de la Ley Núm. 184-2004, supra. Aunque el examen de la historia del funcionamiento

---

[7] Para un recuento extenso sobre el desarrollo histórico de las leyes sobre selección de personal en el servicio público de Puerto Rico, véase, I. García de Serrano, La selección de personal en el servicio público de Puerto Rico, Ed. Universitaria, San Juan, Puerto Rico, 1969.

del sistema que creó la Ley de Personal de 1947 demostró un balance a favor de sus logros, nuestra Asamblea Legislativa entendió necesario "reafirmar sus principios básicos y modernizar el sistema, ajustándolo a los conceptos más dinámicos y efectivos de administración de personal". Íd. Por esa razón, el esfuerzo mayor al crear la Ley Núm. 5, supra, fue "la precisión de una política pública que reafirma[ra] el principio de mérito y ext[endiera] dicho principio a todos los sectores del empleo público a los cuales no se ha[bía] extendido". Íd. Véanse, además, Vázquez Cintrón v. Banco Desarrollo, 171 D.P.R. 1, 15-16 (2007); Torres Ponce v. Jiménez, 113 D.P.R. 58, 70 (1982); Delgado Rivera v. Alcalde de Carolina, 109 D.P.R. 5, 9 (1979). Además, al extenderse a todo el gobierno estos objetivos, "[l]a Asamblea Legislativa … promovió los criterios de mayor uniformidad, equidad y justicia; a la par fomentó la prestación de servicios públicos que aseguren el disfrute pleno de los derechos consagrados en la Carta de Derechos de nuestra Constitución". Cintrón Santana v. Supte. Policía de P.R., 131 D.P.R. 1, 6 (1992).

En 2004, la Ley Núm. 184-2004, supra, derogó la Ley Núm. 5, supra. Al igual que la anterior, la Ley Núm. 184-2004, supra, estableció como política pública la reafirmación del mérito como el principio rector del servicio público. Art. 5, Sec. 5.1, 3 L.P.R.A. sec. 1461c. Ahora bien, a pesar de que esta ley se hizo extensiva a muchas agencias, también contenía muchas exclusiones. Aut.

de Puertos v. Mun. de San Juan, 123 D.P.R. 496, 502 (1989). Se excluyó a (1) la Rama Legislativa; (2) la Rama Judicial; (3) los empleados de agencias o instrumentalidades del Gobierno que funcionan como negocios privados; (4) los empleados de agencias o instrumentalidades del Gobierno que tengan derecho a negociar colectivamente mediante leyes especiales, y (5) la Universidad de Puerto Rico. Íd. Al aprobarse la Ley Núm. 184-2004, supra, se dejaron las mismas exclusiones y se añadieron la Oficina del Gobernador, la Comisión Estatal de Elecciones y la Oficina de Ética Gubernamental. Asimismo, se dispuso que a los empleados de la Rama Judicial les aplicará unas secciones en particular de la ley y quedarían excluidas las categorías de alguaciles auxiliares y secretarias de sala. Véase, Sec. 5.3 de la Ley Núm. 184-2004, 3 L.P.R.A. sec. 1461e.

Sin embargo, a pesar de esas excepciones, en la Ley Núm. 5, supra, se especificó que los grupos excluidos "tendrían que adoptar, con el asesoramiento de la Oficina Central de Administración de Personal, un reglamento de personal en el que se incorporaría el principio de mérito". Torres Ponce v. Jiménez, supra, pág. 69. Véase, además, Vázquez Cintrón v. Banco Desarrollo, supra, págs. 15-16. Igual aclaración se hizo en la Sec. 5.3 de la Ley Núm. 184-2004, supra, al expresarse que "[e]n el caso de las corporaciones públicas o público-privadas, estos [sic] deberán adoptar reglamentos de personal que incorporen el

principio de mérito a la administración de sus recursos humanos, conforme lo dispone este capítulo". 3 L.P.R.A. sec. 1461e. Como señalamos en <u>Reyes Coreano v. Director Ejecutivo</u>, 110 D.P.R. 40, 47-48 (1980), esa salvedad

> revela sin duda la clara intención legislativa de efectuar la armónica instrumentación de uno de los principales objetivos de la ley: extender los beneficios de una administración de personal basada en el principio de mérito al mayor número posible de sectores públicos. A esos fines le impuso a dichas agencias la indefectible obligación de administrar su personal no unionado de conformidad con el principio de mérito, aun cuando en atención a sus particulares circunstancias quedaran efectivamente excluidas de las restantes disposiciones de la ley.
>
> …
>
> Los antecedentes de la ley destacan la importancia que para sus objetivos representaba la reafirmación del principio de mérito como norma rectora en la administración de personal y su extensión de manera uniforme a todos los sectores del servicio público. Así, el Informe Explicativo del anteproyecto propuesto por el Gobernador a la Asamblea Legislativa advirtió claramente el propósito de extender el principio de mérito 'a todos los sectores del servicio público: empleados estatales --incluyendo los de las corporaciones públicas-- empleados municipales'. En su ponencia en torno al P. del S. 1428, la entonces Directora de Personal, Sra. Milagros Guzmán, también puntualizó este propósito al expresar:
>
> …para el Gobierno no es sólo aplicarlo para mejorar el servicio que prestamos, sino que en adición [sic] a eso **en el Gobierno tenemos una obligación moral de ofrecer a los ciudadanos una oportunidad libre de competir, de demostrar sus capacidades.** (Énfasis nuestro.)

El Art. 1B-4 y el Art. 6 de la ley habilitadora de la CFSE, Ley Núm. 45 de 18 de abril de 1935, según enmendada, conocida como "Ley del Sistema de Compensaciones por Accidentes del Trabajo", 11 L.P.R.A. sec. 1b-4[8] y 8, "faculta[n] al Administrador del Fondo a organizar y administrar su propio sistema de personal sin sujeción a la ley de personal aplicable a los empleados públicos, **pero sujeto al principio de mérito**". Ríos Colón v. F.S.E, 139 D.P.R. 167, 173, esc.6 (1995). Véase, además, Laboy v. E.L.A., supra, págs. 192-193. Aunque la CFSE es una instrumentalidad que funciona como negocio privado y por ende está excluida de las leyes de personal del servicio

---

[8] Señala la mencionada sección:

> …
> (g) Administrar su propio sistema de personal y nombrar todos sus funcionarios, agentes y empleados, quienes serán empleados públicos con derecho a pertenecer a la Asociación de Empleados del Gobierno de Puerto Rico y beneficiarse del Sistema de Retiro del Gobierno de Puerto Rico, conferirles los poderes y asignarles las funciones que estime convenientes, así como fijarles su remuneración sujeto a la reglamentación establecida por la Junta de Directores de la Corporación. La Corporación estará exenta de las disposiciones de la Ley Núm. 5 de 14 de octubre de 1975, conocida como 'Ley de Personal del Servicio Público de Puerto Rico', y de los reglamentos de personal adoptados en virtud de la misma. **No obstante, el Sistema de Personal que se establezca deberá estar basado en el principio de mérito y de conformidad con las reglas y reglamentos que a esos efectos adopte el Administrador.**
> (Énfasis nuestro.)

público, la administración de su sistema de personal se regirá por el reglamento de personal adoptado para esos efectos. Art. 1B-4 de la Ley Núm. 45, supra. A través de los años, la CFSE ha aprobado distintos reglamentos para cumplir con el mandato legislativo y asegurar el principio de mérito. Actualmente el Reglamento Núm. 6226 de 6 de noviembre de 2000, "Reglamento de Personal para los Empleados Gerenciales de la Corporación del Fondo del Seguro del Estado" (Reglamento de Personal), es el vigente y el que aplica para resolver esta controversia. En él se determinó que su propósito es "establecer las reglas que han de regir la administración del sistema de personal de la Corporación". Art. 4 del Reglamento de Personal. Se aclaró que sus reglas estarían "*orientadas en el principio de mérito en su diseño, aplicación e interpretación, de manera que el mismo quede siempre salvaguardado*". (Énfasis nuestro.) Íd.

En particular, el Reglamento en cuestión faculta al administrador "a administrar su propio sistema de personal y nombrar todos sus funcionarios, agentes y empleados para la operación eficiente y económica de dicha Corporación". Art. 2 del Reglamento de Personal. Claro está, en el ejercicio de esa función, la autoridad nominadora deberá siempre respetar el principio de mérito y sus áreas de aplicación, a saber: (1) la clasificación de puestos; (2) el reclutamiento y selección; (3) los ascensos, traslados y descensos; (4) los adiestramientos; y (5) la retención.

Art. 7 (4) del Reglamento de Personal. Sobre el principio de "reclutamiento y selección", se plasmó como política que "[l]a Corporación garantiza[rá] atraer el recurso humano más idóneo, **utilizando como base el mérito**, prohibiendo el discrimen por razón de raza, color, sexo, nacimiento, edad, origen o condición social, ideas políticas o religiosas o impedimentos". Art. 5(7) del Reglamento de Personal.

La Sec. 13.1 del Reglamento de Personal dispuso como norma que

> [l]a Corporación establecerá normas de reclutamiento para cada clase de puesto que propenda atraer y retener los mejores recursos humanos disponibles. Las normas establecerán los requisitos para reclutamiento a base del contenido de las especificaciones de clases. En todo momento, los requisitos deberán estar directamente relacionados con las funciones esenciales del puesto. Dichos requisitos tomarán en consideración la información que hubiere disponible sobre el mercado de empleo y los recursos humanos. Las normas establecerán la clase o clases de exámenes y el tipo o los tipos de competencia recomendables en cada caso. Las normas se revisarán periódicamente para atemperarlas a los cambios que ocurran.

De la misma forma, la Sec. 13.2 requiere que las oportunidades de empleo se notifiquen mediante aviso público. A esos efectos, señala que

> [a] los fines de atraer y retener en el servicio público a las personas más capacitadas mediante libre competencia, se divulgarán las oportunidades de empleo por los medios de comunicación más apropiados en cada caso. Se considerarán medios adecuados los siguientes: radio, televisión, prensa (local o regional), publicaciones y

revistas profesionales, sistemas electrónicos de información, comunicaciones con organizaciones profesionales, laborales, cívicas y educativas, comunicaciones interagenciales oficiales, tablones de edictos y otros medios que razonablemente puedan llegar a las personas interesadas. Al determinar la frecuencia y la prioridad de tales anuncios, se tomarán en cuenta que los mismos resulten efectivos, económicos y que faciliten al ciudadano interesado lograr radicar oportunamente su solicitud en la Corporación.

Por otra parte, la Sec. 14.1 del Reglamento de Personal regula lo relativo a la política de ascensos, traslados y descenso. Por ascenso, entiéndase "[e]l cambio de un puesto a otro con funciones de nivel superior, para el cual se ha provisto un tipo mínimo de retribución más alto". Art. 7(5) del Reglamento de Personal. Ordena el mencionado artículo que

[c]omo norma general, **para fortalecer el principio de mérito** con el reclutamiento de los más aptos, **los puestos se cubrirán mediante la competencia abierta.** Podrán participar tanto los empleados de la Corporación como los aspirantes fuera de la misma, según estén calificados. **El Administrador identificará aquellas clases de puestos que por su naturaleza se requiera determinado tipo de experiencia y en esos casos la competencia podrá circunscribirse a los empleados y ex-empleados que posean tal experiencia en la Corporación.** (Énfasis nuestro.)

De las normas sobre ascensos, la Sec. 14.2 del Reglamento de Personal señala:

(1) Se establecerán procedimientos que permitan el ascenso de los empleados gerenciales con el objetivo de proveerles amplias oportunidades de mejoramiento y que los mismos servirán como mecanismo para la efectiva

utilización de los recursos humanos y como estímulo a los empleados para superarse en el cumplimiento de sus deberes.

(2) El Plan de Clasificación de la Corporación se estructurará de forma tal que permita la movilidad de los empleados hacia puestos superiores conforme a los conocimientos y experiencia adquirida. Además, deberá identificar las líneas lógicas de ascenso entre las distintas clases de puestos.

(3) Si un empleado es ascendido y no aprueba el periodo probatorio, regresará a un puesto igual o similar al puesto que ocupaba al momento de ser ascendido.

(4) Ascenso sin Oposición: El Administrador de la Corporación, como mecanismo de excepción, podrá autorizar ascensos mediante exámenes individuales cuando las exigencias excepcionales y especiales del servicio y las cualificaciones especiales de los empleados así lo justifiquen. El Administrador, mediante el establecimiento de normas al efecto, regulará los ascensos sin oposición asegurándose que no se vulnere el principio de mérito existente en la Corporación.

Como puede observarse, las disposiciones reglamentarias citadas otorgan amplia discreción a la autoridad nominadora para administrar su sistema de personal y nombrar a todos sus funcionarios, agentes y empleados para la operación eficiente y económica de la CFSE. De la misma forma, en el reglamento se contempló la posibilidad de limitar la competencia y desviarse del curso ordinario de reclutamiento en situaciones particulares. Sin embargo, una lectura integral de todas las disposiciones citadas revela sin ambages que existe una política de

amplia divulgación de las oportunidades de empleo, de manera que se logre atraer a las personas más capacitadas a trabajar en el servicio público y se respete, por sobre todas las cosas, el principio de mérito. Lo que tenemos que resolver en este caso es si el ejercicio de discreción realizado estuvo dentro de la facultad delegada por el Reglamento de Personal de la CFSE al administrador.

V

La CFSE imputa al foro apelativo intermedio cuatro errores. Por estar íntimamente relacionados, discutiremos los errores primero, tercero y cuarto conjuntamente. En síntesis, en ellos la CFSE atribuye al foro apelativo intermedio errar al declarar válidas las convocatorias internas realizadas a base de un análisis liberal del proceso de reclutamiento estatuido en la Sec. 14.1 del Reglamento de Personal.

Al recapitular los hechos de este caso observamos que los empleados recurridos fueron nombrados mediante convocatorias limitadas a los empleados de la CFSE. Así, es un hecho incontrovertido que esas convocatorias no se divulgaron por radio, prensa, televisión u otros medios de despliegue, fuera de la CFSE, como ordena la Sec. 13.2 del Reglamento de Personal. Apéndice, pág. 104. De la misma forma, surge de las determinaciones de hechos de la Junta que durante la celebración de vistas ante ese foro, varios empleados presentaron como evidencia el memorando que cursó la señora Grajales Méndez al entonces administrador en el

que, amparándose en la Sec. 14.1 del Reglamento de Personal, indicó que por **razón de ubicación**, era **deseable** reclutar personal para unos puestos específicos con conocimientos de los procesos del área. No obstante, al estudiar los números de puestos que se reseñaron en el documento que se adjuntó al memorando que cursó la señora Grajales Méndez, observamos que solo el puesto del señor Rodríguez González es el que surge del total de cuarenta y un números de puestos que incluía la lista. Incluso, el número de puesto que surge es de un primer ascenso que el señor Rodríguez González recibió. Posteriormente se le otorgó otro ascenso del cual el número de puesto no está en esa lista. Lo mismo ocurre con los números de puestos de los demás empleados recurridos. Ninguno aparece. Tampoco en el expediente existe algún documento que justifique las convocatorias internas de los demás empleados recurridos.

En su alegato ante este Tribunal, las empleadas recurridas González Segarra, Martínez Calderón y Fuentes Ortiz esbozan que la Ley Núm. 45, supra, otorga amplia discreción al administrador para manejar el sistema de personal. Art. 1B-4 de la Ley Núm. 45, supra. De igual forma, señalan que añadir a la letra de la Sec. 14.1 del Reglamento de Personal el requisito de un análisis técnico, o el que la justificación tenga que constar por escrito, "representa enmendar por *fiat* interpretativo la letra clara del reglamento, añadiéndole lo que no dice, y peor aún aplicando tal interpretación retroactivamente". Alegato de

las recurridas González Segarra, Martínez Calderón y Fuentes Ortiz, pág. 15. Afirman que de haberse requerido que la justificación para realizar las convocatorias internas estuviese por escrito, así se hubiese hecho constar en el reglamento, como se realizó para la justificación de nombramientos durante la veda electoral. Art. 20 del Reglamento de Personal. A su entender, un administrador cumple con el espíritu del mandato reglamentario si mientras se encuentra en su casa "comienza a pensar en el trabajo y en unas posiciones que se necesitan cubrir de Secretarias I y II, y dado las funciones que van a realizar en las oficinas en que estarán asignadas entiende que debe limitarse la competencia, en esos casos, a empleados con experiencia secretarial obtenida dentro de la Corporación" y al próximo día ordena que se efectúe el proceso de convocatoria interna. Alegato de las recurridas González Segarra, Martínez Calderón y Fuentes Ortiz, págs. 15-16.

Por su parte, los empleados recurridos Santiago Cruz y Díaz Vélez, así como el grupo de los quince empleados recurridos que comparecieron conjuntamente, sostienen que la comunicación en la que la administradora les notificó la anulación de sus nombramientos es contraria a la letra de la norma reglamentaria estatuida en la Sec. 14.1 del Reglamento de Personal y además obvia nuestra determinación en Laboy v. E.L.A., supra. Añaden que el reclutamiento mediante convocatorias internas no era ajeno a la Ley Núm.

5, supra, ni a su predecesora, la Ley Núm. 184-2004, supra. Entienden que ambas leyes dejaron a discreción de la autoridad nominadora la determinación de cuáles puestos serían objeto de ese tipo de reclutamiento. Argumentan, al igual que los demás empleados recurridos, que la Sec. 14.1 del Reglamento de Personal no requiere de un análisis técnico riguroso como el que se pretende exigir. Según ello, solo precisa identificar los puestos que serán considerados para reclutamiento interno. Opinan que pretender lo contrario es poner una camisa de fuerza que la ley ni el reglamento colocan a la autoridad nominadora.

No podemos estar de acuerdo con las alegaciones esbozadas. Al evaluar la letra de la Sec. 14.1 del Reglamento de Personal, nos es forzoso coincidir con las conclusiones de la Junta de Apelaciones. Primero, la mencionada sección comienza con la afirmación de que "para fortalecer el principio de mérito con el reclutamiento de los más aptos, **los puestos se cubrirán mediante la competencia abierta**". Ello, de entrada, advierte que el reclutamiento, incluyendo el de ascenso, debe respetar el principio de mérito y permitir la participación a los aspirantes externos que estén cualificados. No se limita a convocar únicamente a los empleados de la CFSE.

Segundo, es cierto que la autoridad nominadora tiene discreción para limitar la competencia en algunas instancias. Ahora bien, el ejercicio de discreción administrativa no puede hacerse en un vacío. Recordemos que

"[l]a discreción administrativa no es absoluta. Ningún Tribunal estaría dispuesto a convertir la discreción administrativa en un término mágico que permita una arbitrariedad. Discreto es el juicio si además de estar apoyado en la razonabilidad, se encuentra sostenido por una clara noción de justicia en su sentido llano". Belmonte v. Mercado, 95 D.P.R. 257, 276-277 (1967), citando a Rodríguez v. Srio. de Obras Públicas, 86 D.P.R. 258, 265 (1962). Al leer la Sec. 14.1 del Reglamento de Personal, salta a la vista el hecho de que en esa sección no se autorizó identificar un puesto aislado para limitar la competencia, sino toda una "clase de puestos". No hay facultad para nombrar a alguien en particular a un puesto. La convocatoria se refiere a una categoría y no a una posición particular. Recordemos que es norma establecida que los poderes y facultades de los funcionarios y empleados públicos tienen que emanar de alguna disposición legal específica, sea la Constitución, una ley o algún reglamento promulgado bajo autoridad de ley, pero no pueden arrogarse poderes que no le fueron conferidos. ASG v. Mun. San Juan, 168 D.P.R. 337, 343 (2006).

Tercero, la Sec. 14.1 del Reglamento de Personal hace necesario que antes de limitar la competencia haya un estudio previo que especifique cuál es la naturaleza del puesto y la experiencia necesaria para ocuparlo. Sujeto a ese análisis, el administrador podrá decidir si esa clase de puesto en particular hace imperioso que se condicione la

competencia de la convocatoria. Del estudio del expediente no surge ningún análisis sobre la necesidad de que esos puestos se convocaran internamente debido a las particularidades del trabajo a realizarse. Por el contrario, como reluce del estudio del expediente, solo para el puesto 3087 (Supervisor de Inversiones) que se otorgó al señor Rodríguez González es que hubo una justificación para limitar la competencia de la convocatoria como exige la Sec. 14.1 del Reglamento. Sin embargo, al examinar el memorando que contiene la justificación, observamos que el motivo para limitarla era la **ubicación** del puesto. No se indicó por qué ese fundamento permite limitar la competencia abierta a esa plaza según la Sec. 14.1 del Reglamento e invocar una excepción a una práctica importante que salvaguarda el principio de mérito en el reclutamiento de empleados.

**Peor aún, como señaláramos, no encontramos ninguna otra razón para limitar la competencia en el reclutamiento de los demás diecinueve empleados recurridos.** Por eso, no podemos refrendar la convocatoria limitada e interna que se hizo en este caso sin que haya nada en el récord que la justifique. En respeto al principio de mérito, es desacertado y hasta peligroso utilizar de subterfugio la ubicación o peor aún la ausencia de razones para limitar la competencia de una convocatoria. Como expresó la Junta de Apelaciones, la única forma en la que se protege el interés público y se asegura un trato igual, evitándose el

favoritismo personal, la arbitrariedad y el capricho en la administración de los recursos humanos, es respetando las disposiciones reglamentarias que regulan el ejercicio de discreción de la autoridad nominadora.

El expediente está huérfano de alguna determinación por parte de la autoridad nominadora que justifique por qué se excluyó la competencia externa para los puestos en controversia.[9] Más aún, cuando repasamos los requisitos de

---

[9] Reseñamos a continuación los requisitos que las convocatorias dispusieron para cualificar para ellos. Del estudio de los requisitos ahí bosquejados, podremos analizar si la naturaleza del puesto requería determinado tipo de experiencia que justificara limitar la competencia.

La Convocatoria para el puesto de **Asesor en Auditoría** dispuso como requisito un bachillerato de una universidad reconocida con concentración en contabilidad que incluyera quince créditos de contabilidad. Además, ocho años de experiencia relacionada con la intervención de transacciones fiscales.

Por otra parte, la Convocatoria para el puesto de **Terapista Físico Gerencial III** requería, como mínimo, un bachillerato en ciencias de terapia física de una universidad o colegio acreditado y seis años de experiencia progresiva en la práctica de la profesión, que incluyera supervisión. Se añadieron como requisitos indispensables poseer licencia permanente de terapista físico de la Junta Examinadora de Terapistas Físicos de Puerto Rico y estar al día en el registro de profesionales de salud.

La Convocatoria para el puesto de **Oficial Administrativo I** demandaba graduación de escuela superior y cuatro años de experiencia progresiva en la realización de funciones oficinescas o administrativas. También era elegible quien obtuviera sesenta créditos de universidad acreditada y dos años de experiencia en la realización de funciones oficinescas o administrativas. Como última alternativa, era elegible quien obtuviera un bachillerato de una universidad acreditada.

Para el puesto de **Oficial Administrativo II** se señalaron como requisitos mínimos graduarse de escuela superior y cinco años de experiencia progresiva en la realización de funciones oficinescas o administrativas; uno de estos comparable a un Oficial Administrativo I en funciones relacionadas con el área de trabajo en la cual estuviera ubicado el puesto y que incluyera supervisión. En

(continúa...)

su lugar, también podía ser elegible quien tuviera sesenta créditos de universidad acreditada y tres años de experiencia en la realización de funciones oficinescas o administrativas, uno de estos comparables a un Oficial Administrativo I en funciones relacionadas con el área de trabajo en la cual estuviera ubicado el puesto y que incluyera supervisión. Como tercera posibilidad, era elegible quien ostentara un bachillerato de una universidad acreditada y un año de experiencia en la realización de funciones oficinescas o administrativas, comparable a un Oficial Administrativo I en funciones relacionadas con el área de trabajo en la cual está ubicado en el puesto que incluya supervisión.

El puesto de **Secretaria Ejecutiva I** estableció como requisitos mínimos la graduación de escuela superior acreditada suplementada por un curso secretarial o su equivalente que incluya taquigrafía o escritura rápida en español, así como cinco años de experiencia en trabajo secretarial, uno de estos en funciones similares en naturaleza y complejidad a las que realiza una Secretaria IV o Secretaria Itinerante en la CFSE. Como segunda opción, era elegible quien tuviese un grado asociado en ciencias secretariales o su equivalente que incluyera taquigrafía o escritura rápida en español de un colegio o universidad acreditada y tres años de experiencia en trabajo secretarial que incluyera toma y transcripción de dictados en español, uno de estos en funciones similares en naturaleza y complejidad a las que realiza una Secretaria IV o Secretaria Itinerante en la CFSE. Como tercera alternativa, era elegible quien ostentara un bachillerato en ciencias secretariales o su equivalente de un colegio o universidad acreditada. Se advirtió que treinta créditos aprobados de un colegio universitario o universidad acreditada que incluyera doce créditos en ciencias secretariales sustituirán hasta un máximo de un año de la experiencia secretarial establecida en el requisito mínimo de graduación de escuela superior.

Los requisitos para el puesto de **Secretaria Ejecutiva III** incluidos en la convocatoria fueron graduación de escuela superior acreditada suplementada por un curso secretarial o su equivalente que incluyera taquigrafía o escritura rápida en español y siete años de experiencia en trabajo secretarial, uno de estos en funciones similares en naturaleza y complejidad a las que realiza una Secretaria Ejecutiva II en la CFSE. En la alternativa, era elegible quien tuviera un grado asociado en ciencias secretariales o su equivalente que incluya taquigrafía o escritura rápida en español de un colegio o universidad acreditada y cinco años de experiencia en trabajo secretarial, uno de estos en funciones similares en naturaleza y complejidad a las que realiza una Secretaria Ejecutiva II en la CFSE. Como tercera alternativa, era elegible quien ostentara un

(continúa...)

elegibilidad de las convocatorias a los puestos antes reseñados, es ineludible concluir que para ninguno de ellos se requiere una experiencia particular atada a las funciones específicas que se llevarían a cabo. Además, salta a la vista que dentro del amplio campo de personas que están en búsqueda de trabajo, puede haber uno o más con las cualificaciones necesarias para solicitar a estos

---

bachillerato en ciencias secretariales o su equivalente de un colegio o universidad acreditada y tres años de experiencia en trabajo secretarial, uno de estos en funciones similares en naturaleza y complejidad a las que realiza una Secretaria Ejecutiva II en la CFSE. Finalmente, se indicó que treinta créditos aprobados de un colegio universitario o universidad acreditada que incluyera doce créditos en ciencias secretariales sustituirían hasta un máximo de un año de experiencia secretarial establecida en el requisito mínimo de graduación de escuela superior.

El puesto de **Especialista en Rehabilitación del Hospital Industrial** requería una maestría en consejería en rehabilitación de una universidad acreditada. Dieciocho créditos post-graduados en Evaluación Vocacional de una universidad acreditada y tres años de experiencia progresiva relacionada con la consejería en rehabilitación. Finalmente, se requería certificación de evaluación vocacional y licencia de consejero en rehabilitación.

Para el puesto de **Supervisor de Inversiones** era requisito un cuarto año de escuela superior suplementada por cursos de bienes raíces y cuatro años de experiencia relacionada con bienes raíces. En su lugar, también era elegible quien contara con un bachillerato de una universidad reconocida suplementado por un curso de bienes raíces.

Finalmente, el puesto de **Especialista en Reclamaciones y Compensaciones I** dispuso como requisitos mínimos un bachillerato de una universidad o colegio reconocido y cuatro años de experiencia progresiva relacionada con actividades que involucren el campo de reclamaciones y compensaciones por accidentes del trabajo. En su lugar, también era elegible quien ostentara una maestría de una universidad o colegio reconocido y dos años de experiencia progresiva relacionada con actividades que involucraran el campo de reclamaciones y compensaciones por accidentes del trabajo. En el expediente no constan las convocatorias para los puestos de Supervisor de Limpieza, Oficial Ejecutivo y Subdirector Ejecutivo Regional.

puestos. **Reiteramos que no existe en el expediente otra fuente que evidencie que las clases identificadas requieran amplio conocimiento de la CFSE, sus operaciones, normas, requisitos y procedimientos.**

Por último, varios empleados recurridos fundamentan la validez de las convocatorias internas en lo resuelto en Laboy v. E.L.A., supra. De igual forma, el Tribunal de Apelaciones, amparándose en ese caso, afirmó que "en los procesos de reclutamiento, selección o ascenso, las agencias no están siempre obligadas a la publicación de convocatorias de *libre competencia* para cumplir con el principio de mérito incorporado en estas leyes." (Énfasis en el original.) Apéndice, pág. 44. La premisa esbozada por el foro apelativo intermedio es correcta. De hecho, en ningún momento la CFSE ha afirmado que la única forma de cubrir una vacante sea mediante la publicación de libre competencia. Tampoco ha argumentado, como señalan los empleados recurridos Santiago Cruz y Díaz Vélez, que la Sec. 14.1 derrote el principio de publicidad e impida que candidatos idóneos fuera de la CFSE puedan ser reclutados. La contención de la parte peticionaria en este caso es que se ignoró la letra de la disposición reglamentaria que ordena que para limitar la competencia a los empleados de la CFSE el administrador tiene que identificar las **clases de puestos** que por su naturaleza requieren determinado tipo de experiencia previa.

VI

Como segundo señalamiento de error la CFSE aduce que el Tribunal de Apelaciones incidió al determinar que los nombramientos mediante convocatorias internas cumplieron con el mandato de la Ley Núm. 111-2006, supra.

La Ley Núm. 111-2006, supra, se promulgó con el propósito de "establecer las normas y principios que enmarcar[á]n y regir[á]n el control de gastos en la nómina del Gobierno **con cargo al Fondo General** como parte de una sana administración y reforma fiscal." Exposición de Motivos de la Ley Núm. 111-2006. Su génesis fue el producto de la crisis fiscal por la que atravesaba el Gobierno de Puerto Rico. A esos efectos, la Asamblea Legislativa entendió necesario establecer controles al gasto de nómina en el Gobierno, entre otras medidas de sana administración pública. Para lograr ese objetivo, se redujeron las plazas de confianza en el Gobierno con cargo al Fondo General en diez porciento anual por el término de cinco años a partir del año fiscal 2006-2007, hasta alcanzar una reducción de cincuenta porciento. Art. 2 de Ley Núm. 111-2006. De igual forma, se ordenó la reducción de nómina de empleados de confianza en el Gobierno con cargo al Fondo General en un 6.6% anual hasta alcanzar un 33%.

Por otra parte, en el Art. 3 de la Ley Núm. 111-2006, supra, se dictaminó la congelación de las plazas en el Gobierno. Particularmente, se dispuso que

> [d]el total de plazas que queden vacantes durante el año fiscal en el Gobierno de Puerto Rico y cuyo costo se sufrague con cargo al Fondo General,

una tercera parte quedará vacante y será eliminada del Plan de Clasificación de la Agencia luego de una evaluación de la naturaleza de la plaza y notificación a esos efectos a la Oficina de Recursos Humanos del Estado Libre Asociado de Puerto Rico, a la Oficina de Gerencia y Presupuesto. El cuarenta por ciento (40%) de los ahorros que se generen en cada agencia durante los primeros tres años de esta política de congelación de plazas ingresará a un fondo especial de la agencia para financiar mejoras salariales a los empleados de conformidad con los convenios colectivos en cada entidad. La Oficina de Gerencia y Presupuesto establecerá controles para la implantación de esta disposición. **En caso de existir la necesidad de cubrir un puesto que quede vacante, tendrá que ser autorizado por la Oficina de Gerencia y Presupuesto y deberá cubrirse, preferentemente, por el ascenso de una persona en funciones en la agencia en un rango inferior o equivalente.** (Énfasis nuestro.)

Íd.

Con el mismo propósito se aprobó la Ley Núm. 103-2006, supra. Esta implantó la Reforma Fiscal del Gobierno, que incluyó, entre otros asuntos, la restructuración del proceso presupuestario así como la prohibición de la utilización de deudas, préstamos o cualquier mecanismo de financiamiento para cubrir gastos operacionales, de manera que se pudiese balancear el presupuesto general de gastos del Gobierno. Específicamente, el Art. 14 de la Ley Núm. 103-2006, 3 L.P.R.A. sec. 8763, dispuso qué hacer con los puestos vacantes:

Cualquier puesto de personal de carrera que esté vacante al momento de entrar en vigor esta Ley o que quede vacante con posterioridad a la aprobación de la misma y cuyo costo se sufrague con

cargo al Fondo General, permanecerá vacante. Luego de un plazo que nunca será menor de seis (6) meses, si fuera necesario ocupar el puesto, deberá mediar una justificación de la agencia para la ocupación del puesto y autorización por escrito de la Oficina de Gerencia y Presupuesto. Se seguirá el siguiente orden de prioridad al momento de reclutar la persona para cubrir la vacante:

(a) Se ocupará la vacante por el ascenso o traslado de otra persona, empleado de carrera de la misma agencia, cuyo puesto a su vez quedará vacante.

…

En su alegato ante este Tribunal, los empleados recurridos Santiago Cruz y Díaz Vélez sostienen que la interpretación de la CFSE "hace abstracción total de lo que era la política pública del Gobierno de Puerto Rico al momento en que se realizaron los nombramientos en controversia. Arguyen que mediante la Carta Circular Núm. 82-07 de 30 de agosto de 2006, el Director de la Oficina de Gerencia y Presupuesto emitió las normas relacionadas al control de gastos en el Gobierno. Afirman que esa Carta se dirigió a los secretarios, jefes de agencias, directores de oficina y corporaciones públicas del Gobierno. Asimismo, se dispuso en la Carta que lo allí dispuesto sería aplicable a todas las agencias e instrumentalidades del Gobierno. Los empleados recurridos hacen énfasis en la Parte VII, Sec. C del documento que expresó que:

[l]a entidad gubernamental deberá, siempre y cuando no afecte el principio de mérito según dispuesto en la Ley Núm. 184, supra, dar un grado de

> preferencia al ascenso de una persona
> en funciones en la agencia en un rango
> inferior o equivalente al momento de
> llenar el puesto.

_Alegato de los recurridos Santiago Cruz y Díaz Vélez_, pág. 24.

Aseguran que esa política de control de gastos se recogió en el memorando que la señora Correa Gómez cursó al entonces administrador, en que advirtió de las órdenes ejecutivas, boletines administrativos y cartas circulares sobre la política de control y reducción de gastos. Los empleados recurridos hacen alusión a un párrafo del texto del memorando cursado por la señora Correa Gómez en el que expresó que "[c]on ánimo de colaborar y cumplir con las disposiciones de la referida reglamentación aquí, [sic] expuesta recomendamos se impartan directrices para el nuevo año fiscal cónsonas con los objetivos de reducción de gastos establecidos". _Íd_.

A la luz de lo anterior, los empleados recurridos aseguran que el mecanismo desarrollado fue el de favorecer los ascensos de los empleados de la misma agencia como una medida de control de gastos de nómina y evitar que se rebasara el porciento permitido y autorizado para gastos de administración en la CFSE. Al igual que determinó la Junta de Apelaciones, entendemos que los empleados no probaron que la CFSE adoptara la política de control de gastos que establecieron la Ley Núm. 111-2006, _supra_ y la Ley Núm. 103-2006, _supra_. En primer lugar, esas leyes eran inaplicables a las corporaciones públicas que no dependieran del Fondo General del Gobierno, como la CFSE.

En segundo lugar, las leyes en controversia no dejaron sin efecto el principio de mérito. En tercer y último lugar, como señaló correctamente la Junta de Apelaciones, la señora Correa Gómez no era la autoridad nominadora.

En ausencia de prueba en contrario, tenemos que concluir que las disposiciones del Reglamento de Personal eran las que regían al momento de realizarse los ascensos en controversia. Sabido es que una carta circular es una regla no-legislativa ya que no tiene la fuerza de ley que se le atribuye a los reglamentos. "Distinto a las [reglas] no-legislativas [como lo es una Carta Circular], las reglas legislativas tienen el mismo peso que una ley aprobada por la Asamblea Legislativa". H. Méndez Juarbe, Derecho Administrativo, 73 Rev. Jur. U.P.R. 509, 510-511 (2004).

La limitación de gastos invocada no dejó sin efecto el principio de mérito. De todos modos, si acogiéramos para fines argumentativos la tesis de los empleados recurridos el resultado sería el mismo, porque en el expediente del caso no hay evidencia de que las transacciones de personal fueran aprobadas por la Oficina de Gerencia y Presupuesto, como requería el Art. 3 de la Ley Núm. 111-2006, supra. Evidentemente eso se debe a que esa ley no aplica. Por lo tanto, es inmeritorio el planteamiento de las recurridas.

Así pues, en conclusión, los nombramientos de los empleados recurridos efectuados mediante convocatoria interna, violaron el Reglamento de Personal de la CFSE y fueron contrarios al principio de mérito. No se demostró

que había que apartarse del mecanismo de competencia abierta, garantía de que los nombramientos y ascensos se hacen por mérito y no por favoritismo. Puestos como el de secretaria, oficial administrativo y supervisor de limpieza no son posiciones de reclutamiento difícil ni presentan una particularidad que requiera limitar la competencia. El expediente no lo justificó. Por todo ello, abusaron de su discreción los anteriores administradores al permitir y validar la concesión de ascensos mediante convocatorias internas que no se justificaron.

## VII

Por los fundamentos antes expuestos, se revoca la Sentencia del Tribunal de Apelaciones y en su lugar, se reinstala la "Decisión y Orden sobre Convocatorias Internas" que emitió la Junta de Apelaciones de la CFSE.


RAFAEL L. MARTÍNEZ TORRES
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Wanda I. González Segarra, Ana I. Nieves Santiago, Zilka I. Moll Molina, Emelda Pizarro Cámara y otros

       Recurridos

         v.

CC-2011-1051

Corporación del Fondo del Seguro del Estado

       Peticionario

SENTENCIA

En San Juan, Puerto Rico, a 19 de marzo de 2013.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte integrante de la presente Sentencia, se revoca al Tribunal de Apelaciones y en su lugar, se reinstala la "Decisión y Orden sobre Convocatorias Internas" que emitió la Junta de Apelaciones de la CFSE.

Lo acordó y ordena el Tribunal, y lo certifica la Secretaria del Tribunal Supremo. El Juez Presidente señor Hernández Denton emitió una opinión disidente a la cual se unieron la Jueza Asociada señora Fiol Matta y la Juez Asociada señora Rodríguez Rodríguez.

Aida I. Oquendo Graulau
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Wanda I. González Segarra, Ana I. Nieves Santiago, Zilka I. Moll Molina, Emelda Pizarro Cámara y otros

    Recurridos

       v.

Corporación del Fondo del Seguro del Estado

    Peticionario

|  | CC-2011-1051 | *Certiorari* |

Opinión Disidente emitida por el Juez Presidente SEÑOR HERNÁNDEZ DENTON, a la cual se unen las Juezas Asociadas SEÑORA FIOL MATTA y SEÑORA RODRÍGUEZ RODRÍGUEZ

San Juan, Puerto Rico, a 19 de marzo de 2013.

Una mayoría de este Tribunal concluye que en este caso se violó el principio de mérito y las disposiciones del Reglamento de Personal para los Empleados Gerenciales de la Corporación del Fondo del Seguro del Estado, Núm. 6226, aprobado el 11 de enero de 2000 (Reglamento de Personal). Esto, por determinar que administradores anteriores abusaron de su discreción al permitir y validar la concesión de ascensos mediante convocatorias internas sin justificarlo. De esa forma, sostienen la revocación de los nombramientos de los aquí recurridos. Por entender que el Reglamento no tiene el alcance que la Opinión mayoritaria le quiere otorgar, que las

convocatorias internas de los recurridos se hicieron conforme al Reglamento y que el principio de mérito no se violó en este caso, disentimos.

I.

En apretada síntesis, los hechos que dan origen a la presente controversia son los siguientes. Luego de asumir su cargo, la Administradora de la Corporación del Fondo del Seguro del Estado (CFSE), Lcda. Zoimé Álvarez Rubio, ordenó una auditoría sobre los expedientes de personal y las transacciones relativas a la administración de los recursos humanos de la CFSE correspondientes al periodo de enero 2001 a diciembre 2008. El propósito de la auditoría era determinar el cumplimiento de la CFSE con el principio de mérito al realizar nombramientos y ascensos. En total, se auditaron 3,835 expedientes.

Según la auditoría, el proceso de reclutamiento de personal gerencial se debía realizar mediante convocatorias abiertas. Sin embargo, el auditor concluyó que desde el año 2003 se había cambiado el proceso a uno de convocatorias internas. En específico, encontró 232 expedientes que reflejaban esa práctica y que, según él, no contenían un análisis técnico que justificara realizar ese tipo de convocatoria excepcional.

Tras esta auditoría, la licenciada Álvarez Rubio envió cartas a los 232 empleados afectados notificándoles la intención de anular sus nombramientos. Estos ejercieron su derecho a solicitar una vista administrativa. Luego de su

celebración, el Oficial Administrador recomendó ratificar la nulidad de todos los nombramientos. La licenciada Álvarez Rubio acogió la recomendación y notificó a los empleados la anulación.

Veintitrés empleados, la Asociación de Empleados Gerenciales y la Federación de Empleados Gerenciales apelaron la determinación ante la Junta de Apelaciones de la CFSE. Esta emitió una determinación por mayoría, 2 a 1, confirmando la anulación de los nombramientos. Sin embargo, existían discrepancias entre los dos votos mayoritarios. Por eso, hicieron constar sus criterios separadamente.

Inconformes, 20 empleados acudieron al Tribunal de Apelaciones.[10] Ese foro determinó que procedía la revocación de la resolución porque:

1)el cumplimiento con el principio de mérito no exige un proceso rígido de reclutamiento, selección o ascenso que pueda lograrse únicamente mediante la competencia abierta;

2) la decisión tomada por el Administrador que realizó los

---

[10] Cabe destacar que otro grupo de empleados presentó una demanda sobre discrimen político y violación al debido proceso de ley, por los mismos hechos, en el Tribunal de Distrito Federal para el Distrito de Puerto Rico. Aunque inicialmente la misma fue desestimada, el pasado 7 de febrero de 2013 el Primer Circuito de Apelaciones de Boston revocó esa determinación y devolvió el caso al Distrito con instrucciones de mantener los procedimientos paralizados hasta que se resuelva el caso de autos. Véanse Casiano-Montañez v. State Ins. Fund Corp., ___ F.3d ___ (2013), 2013 WL 494354; Casiano-Montañez v. State Ins. Fund Corp., 852 F.Supp.2d 177 (2012).

nombramientos está cobijada por una presunción de corrección que no fue rebatida en este caso; y 3) tanto la Administradora como la Junta de Apelaciones determinaron la nulidad de los nombramientos por razón del incumplimiento de unos requisitos legales que no están presentes en las leyes de personal público ni en el Reglamento de Personal del Fondo.

En desacuerdo con esa determinación, la CFSE acudió ante nos.

## II.

La Opinión mayoritaria revoca la determinación del foro apelativo. Desde el inicio, se refiere a las convocatorias internas como una excepción que se ha convertido en regla. Sin embargo, somos del criterio que los hechos de este caso no nos permiten llegar a esa conclusión. Esto, porque luego de la auditoría solo se cuestionó la validez de 232 nombramientos de los 3,835 expedientes analizados. Es decir, un 6 por ciento del total de expedientes. Esto a su vez representa un promedio de 29 de 479 transacciones anuales. Definitivamente, no estamos hablando de una práctica rutinaria.

Además, una mayoría de este Tribunal indica que las convocatorias internas constituyen una excepción estricta. Así, concluyen que en este caso se violó el principio de mérito y el Reglamento de Personal, *supra,* puesto que no se justificó que las posiciones en cuestión requirieran limitar la competencia a los empleados de la CFSE. Aunque

reconocen que la autoridad nominadora tiene discreción para limitar la competencia en determinadas instancias, exigen: 1) que la decisión esté basada en un estudio previo que especifique cuál es la naturaleza del puesto y la experiencia para ocuparlo, y 2) que la justificación de la decisión conste en récord.

En específico, la Opinión mayoritaria indica que, del expediente del caso ante nos, no surge ningún análisis sobre la necesidad de que los puestos se convocaran internamente. Además, señala que **"no existe en el expediente otra fuente que evidencie que las clases identificadas requieran amplio conocimiento de la CFSE, sus operaciones, normas, requisitos y procedimientos"**. (Énfasis en el original)

Tampoco estamos de acuerdo con la imposición de esos requisitos porque no surgen de la disposición reglamentaria. Veamos.

La Sec. 14.1 del Reglamento de Personal, *supra*, pág. 71, establece que:

**Como norma general**, para fortalecer el principio de mérito con el reclutamiento de los más aptos, los puestos se cubrirán mediante la competencia abierta. Podrán participar tanto los empleados de la Corporación como los aspirantes fuera de la misma, según estén cualificados. El Administrador **identificará** aquellas clases de puestos que por su naturaleza se requiera determinado tipo de experiencia y en esos casos la competencia podrá circunscribirse a los empleados y ex empleados que posean tal experiencia en la Corporación. (Énfasis nuestro).

De un análisis de la disposición surge que, en efecto, el Administrador de la CFSE tiene discreción para limitar la convocatoria. Ahora bien, en ningún momento dispone que

es una excepción estricta, no requiere ningún procedimiento ni análisis particular para tomar la decisión de limitar la competencia, ni que se haga constar en el récord. Además, no requiere un conocimiento amplio de la Corporación, sus operaciones, normas, requisitos y procedimientos. Asimismo, esta disposición permite las convocatorias internas, respetando el principio de mérito.

A la misma conclusión llegamos contrastando este lenguaje con el utilizado en otras disposiciones del mismo reglamento. Por ejemplo, la Sec. 14.2(4), *supra,* pág. 72, sobre ascenso sin oposición establece que:

El Administrador de la Corporación, **como mecanismo de excepción,** podrá autorizar ascensos mediante exámenes individuales cuando las **exigencias excepcionales y especiales del servicio y las cualificaciones especiales de los empleados así lo justifiquen.** El Administrador, **mediante el establecimiento de normas al efecto,** regulará los ascensos sin oposición asegurándose que no se vulnere el principio de mérito existente en la Corporación. (Énfasis nuestro).

Por su parte, el Art. 20, *supra,* pág. 105, sobre la prohibición de transacciones de personal dispone que:

Para toda excepción que se efectúe, el área de trabajo correspondiente someterá a la Administración Auxiliar de Recursos Humanos un **informe indicando la justificación** de los efectos adversos que deben evitarse mediante la excepción. Esta justificación se someterá a la aprobación del Administrador. **De toda excepción deberá mantenerse un expediente en la Administración Auxiliar de Recursos Humanos.** (Énfasis nuestro).

Como vemos, estas disposiciones son específicas en cuanto a la justificación necesaria para aplicar las excepciones que reglamentan y el modo de hacerla constar. No así la Sec. 14.1 interpretada en este caso.

Por último, no podemos coincidir con las expresiones de la mayoría en cuanto a que las convocatorias internas en cuestión violaron la Sec. 13.2 del Reglamento de Personal porque no se divulgaron por radio, prensa, televisión u otros medios de despliegue fuera de la CFSE. Esto porque la referida sección lo que dispone es que se divulguen "las oportunidades de empleo **por los medios de comunicación más apropiados en cada caso**", Reglamento de Personal, *supra,* pág. 49-50. Precisamente, entre los medios adecuados que enumera la disposición se encuentra el utilizado en este caso: los tablones de edictos de la CFSE.

III.

Por todo lo anterior, disentimos del curso de acción seguido por la mayoría de este Tribunal y, en consecuencia, hubiéramos confirmado la Sentencia del Tribunal de Apelaciones.

Federico Hernández Denton
Juez Presidente